CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. SNOW, ADMINISTRATOR.

[No. 5,153. Filed June 7, 1905. Rehearing denied April 27, 1906.]

1. PLEADING.—*Complaint.*—*Motion to Make More Specific.*—*Railroads.*—*Defective Switch Locks.*—It is not error to overrule a motion to make more specific a complaint alleging that defendant railroad company negligently left a switch open at a time when it should have been locked; that. such switch and lock were insufficient and so out of repair that the switch could not be securely locked and fastened and that defendant negligently allowed such lock, switch and target to be and remain out of repair, weak, insufficient and defective. *Tipton Light, etc., Co.* v. *Newcomer,* 156 Ind. 348, distinguished; *Ohio, etc., R. Co.* v. *Heaton,* 137 Ind. 1, followed. p. 649.

2. SAME.—*Complaint.*—*Railroads.*—*Open Switch.*—A complaint showing that defendant negligently left and permitted the lock, switch and appliances to become and remain open at a time when the switch should have been closed and locked, sufficiently shows negligence in the management of the switch. p. 650.

3. APPEAL AND ERROR.—*Appellate Court Rules.*—*"Condensed Recital of Evidence."*—A brief containing seventy-six printed pages of the evidence, including much as originally given as well as arguments and objections of counsel interspersed, is not a "condensed recital of the evidence" as required by Appellate Court rule 22. p. 651.

4. SAME.—*Bills of Exceptions.*—*Evidence.*—*Models.*—*Whether in Record.*—Where the bill of exceptions shows that a model of a

railway switch and certain other appliances were used by the witnesses in their testimony, but such articles are not included in the bill of exceptions, such testimony will be considered in the record, certain photographs of such articles being included in the bill, from which the court can ascertain the meaning of such testimony. p. 652.

5. TRIAL. — *Instructions.* — *Master and Servant.* — *Railroads.* — *Care.*—An instruction that a railroad company owes its engineer the duty to keep its switches, targets, locks and appliances in good repair, "so that it will be safe for its employes to discharge their duties," is erroneous, reasonable care only being required. p. 652.

6. MASTER AND SERVANT.—*Ways, Works and Machinery.*—*Defective by Use.*—*Care Required.*—Where the master installs modern and safe machinery, and by usage such machinery becomes insecure and dangerous, the master is not liable unless he knows or by the exercise of reasonable care should know such machinery is insecure and dangerous. p. 653.

7. APPEAL AND ERROR.—*Erroneous Instructions.*—*How Cured.*— An erroneous instruction is not cured by the giving of other instructions which are correct. p. 654.

8. SAME. — *Inconsistent Instructions.* — *Misleading.*—The giving of inconsistent instructions, calculated to mislead the jury, is reversible error. p. 655.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Thomas H. Snow, as administrator of John Critz, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $6,000, defendant appeals. *Reversed.*

*C. E. Cowgill, John T. Dye* and *A. B. Everhard,* for appellant.

*Chipman, Keltner & Hendee, Bagot & Bagot* and *R. M. Van Atta,* for appellee.

ROBINSON, J.—Action by appellee, as administrator of the estate of John Critz, deceased, for damages for personal injuries resulting in the death of Critz. Trial by jury. Verdict and judgment for appellee.

Overruling (a) appellant's motion to make the complaint more specific, (b) the demurrer to the complaint,

(c) the motion for judgment on the answers to interrogatories, and (d) the motion for a new trial, are assigned as errors.

The complaint avers that on January 5, 1901, and for many years prior thereto, Critz was in appellant's employ as engineer of a passenger-train; that a switch track led from the main track to a factory, and for several years there had been a switch target for throwing the switch to turn cars from the main track to the switch track; that appellant kept at the switch a target and padlock, which were so attached that when in good repair and securely locked the switch would remain in the position in which it was left by appellant, and thereby prevent the switch from being changed without the act of appellant and its servants and employes; that when the switch, target and padlock were in good condition and repair, and securely locked and fastened, it was safe for appellant to operate its trains over the switch and track at that point; that it was decedent's duty to run and operate a train at great speed over the main track without entering the switch, and that he had nothing to do with the maintenance, inspection or repair of the switch, or the appurtenances connected therewith, and that it was not any part of his duty to inspect or care for the same; that on the above date, and continuously to that date from September 1, 1900, the switch, target and padlock were insecure, insufficient and out of repair, so that the switch could not be and was not securely locked and fastened, but the "lock, target and switch were by the defendant negligently and carelessly allowed to be, become and remain out of repair, and to be and remain weak, insufficient and defective, all of which defendant well knew and could have known by ordinary care and diligence;" that the decedent, in the discharge of his duty, and in compliance with the requirements of the appellant, was running the engine at from forty to sixty miles an hour at the time

of reaching the switch; that appellant had "carelessly and negligently installed, left and permitted said padlock, target, switch and the appliances connected therewith to be, become and remain out of repair, unlocked, unfastened, insecure and open at a time when the same should have been securely closed and locked to enable said train to pass over said main track, so that previously to and on the approach and attempt of said engineer John Critz, deceased, to pass his said engine and cars over and on the main track where it intersects said switch said engine was violently thrown from the track, and said decedent thereby killed;" that decedent had no notice or knowledge of such defective condition, or that the same was open, and could not have known the same by the use of ordinary care.

The motion to make the complaint more specific in certain particulars, we think, was properly overruled. It alleged that the "defendant" negligently left the

1. switch open at a time when it should have been closed and locked. It also alleged that for a period stated the switch target and lock were insufficient and out of repair, so that the switch could not be, and was not, securely locked and fastened, but that the lock, switch and target were by appellant negligently allowed to be and remain out of repair, and to be and remain weak, insufficient and defective. It is argued that the pleading does not state sufficiently what the defects were, and wherein located, and the case of *Tipton Light, etc., Co.* v. *Newcomer* (1901), 156 Ind. 348, is cited. In that case it was alleged that the company had negligently permitted its high-pressure line "to become defective, insufficient and out of repair;" and it was held that the pleading failed to show how it had become defective, or how it was insufficient, or how out of repair. In the case at bar it is averred that when appellant kept the switch, target and lock in good repair, and securely locked, the switch would remain in the position in which left by appellant, and that when they were in good

condition and repair, and securely locked and fastened, it made it safe for appellant to operate its trains over the switch and track at that point. The two acts of negligence alleged in the pleading are that appellant negligently left the switch open at a time when it should have been closed, and requiring decedent to run a train over the same without notice of such defect, and negligently using in connection with the switch a defective lock which rendered the use of the switch unsafe, and requiring decedent to use the same without notice of such defect.

The lock and switch are parts of one apparatus, and the defective lock rendered the switch dangerous. In alleging the defect, the pleading speaks of the switch, target and lock, and avers that when they were in good condition and repair, and locked and fastened, it was safe to operate trains over the switch and track at that point; that at the time in question this lock and switch were insecure, insufficient and out of repair, so that the switch could not be and was not securely locked and fastened, but that appellant negligently allowed the lock and switch to become and remain "out of repair, and to be and remain weak, insufficient and defective." The theory of the pleading seems to be that the injury resulting in decedent's death was caused by the defective lock, and we think the language used by the court in *Ohio, etc., R. Co.* v. *Heaton* (1894), 137 Ind. 1, is applicable here. In that case, in sustaining the overruling of a motion to make a complaint more specific as to alleged defects in a lock, the court said: "To say of the lock that it was 'old, worn out, out of repair, broken, and unsafe,' was certainly sufficient, and even more than sufficient, to apprise the appellant of the charge made as to its defective condition."

In support of the demurrer to the complaint counsel argue that if the open condition of the switch was one of the two acts of alleged negligence that caused the injury, then the complaint was defective in that it did not allege that appellant had knowledge or had

opportunity for knowing of such condition. But the plead-
ing alleges that the "defendant" had negligently left and
permitted the lock, switch and appliances to become and
remain open, at a time when the switch should have been
closed and locked to enable the train to pass over the main
track.

One of the grounds of the motion for a new trial is that
the verdict of the jury is not sustained by sufficient evi-
dence. Counsel for appellee insist in their brief
3. that no question is presented as to the sufficiency of
the evidence, because of the failure to comply with
rule twenty-two of this court. That rule provides: "If the
insufficiency of the evidence to sustain the verdict or find-
ing, in fact or law, is assigned, the statement shall contain
a condensed recital of the evidence in narrative form so as
to present the substance clearly and concisely." What is
intended as a recital of the evidence occupies seventy-six
pages of appellant's printed brief. In many places are set
out the questions and answers on direct, cross-examination
and reëxamination of witnesses, and running through this
recital of the evidence are numerous arguments of counsel
upon the evidence as to what it does or does not prove.
There can be no doubt as to what is meant by a "condensed
recital of the evidence in narrative form so as to present
the substance clearly and concisely," nor can there be any
doubt that the purpose intended to be subserved by this rule
is to present the substance of the evidence as given at the
trial, in a connected form and as concisely as possible. We
do not think there has been such a compliance with the rule
in this case as entitles appellant to a review of the question
that the evidence was not sufficient to sustain the verdict.
See *Boseker* v. *Chamberlain* (1903), 160 Ind. 114; *Indi-
ana, etc., R. Co.* v. *Ditto* (1902), 159 Ind. 669; *Franklin
Ins. Co.* v. *Wolff* (1903), 30 Ind. App. 534; *Harrold* v.
*Fuenfstueck* (1903), 31 Ind. App. 275.

It is also earnestly insisted by counsel for appellee that not all the evidence is in the record. It appears that a model of a railway switch and certain other appliances were used by some of the witnesses in their answers to questions, by way of demonstration, and in some instances the operation of these models was a material part of the answers of the witnesses. While we can not commend the method in which the evidence is here presented, where these models and appliances were used by witnesses in giving their testimony, however, when this testimony is considered in connection with certain photographs and a map or plat which were put in evidence, we may determine what the witnesses meant. *White* v. *Cincinnati, etc., Railroad* (1904), 34 Ind. App. 287.

Complaint is made of certain instructions. Instruction eleven, given by the court at the request of appellee, is as follows: "It is the duty of a railroad company to keep its switches, targets, locks and appliances upon its road and right of way in good repair, so that it will be safe for its employes to discharge their duties, and if the defendant company failed to keep the lock in repair at the place where the plaintiff was killed, so that by reason of such want of repair, the decedent's train, without fault upon his part, and without knowledge on his part of such condition, was turned from the main track to the side-track, and the engine overturned, and the decedent killed, then, in that case, I charge you that the defendant would be liable to the plaintiff in this case." We think this instruction is too broad, so far as it undertakes to define the duty owing from the appellant to the decedent. It is the duty of an employer to make the working place of its employes safe, but this duty is performed if the employer exercises reasonable and ordinary care. The instruction leaves the jury to conclude that the duty to make switches and appliances upon its road and right of way safe is absolute, and that if they should find that the switches and appliances were

not safe, the negligence of the company would be established; that is, although the evidence might show that the appliances were all that reasonable and ordinary care would suggest, or that the highest degree of care had been exercised to keep these appliances in repair, yet the jury, under this instruction, were told in effect that they were required to decide the one question only, namely, whether the appliances were or were not safe.   The general rule has often been approved that the employer must exercise ordinary skill and care in providing the employe with a safe working place and with safe machinery and appliances.   To say that the employer must provide safe appliances, and that if he fails to do so, and an injury results, there is a liability, is equivalent to saying that the employer becomes, through the contract of hiring, an insurer against injury. In the contract of hiring there is an implied undertaking that the employer will use all reasonable care to furnish safe premises and appliances for conducting the business safely.   *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *Krueger* v. *Louisville, etc., R. Co.* (1887), 111 Ind. 51; *Pennsylvania Co.* v. *Whitcomb* (1887), 111 Ind. 212; *Wabash Paper Co.* v. *Webb* (1896), 146 Ind. 303.

We think the instruction objectionable for another reason.   It proceeds upon the theory that if the switches and appliances were defective at the time of the injury, it was because appellant had failed to keep them in repair, not that appellant had installed defective appliances, and was maintaining them at the time of the injury.   If defective appliances were put in and maintained, appellant was necessarily bound to know they were defective at the time of the injury.   But if the appliances when put in were proper appliances, and were not in repair at the time of the injury, the company might or might not be bound to know they were not in repair.   If they were out of repair, and appellant knew it, or if they had been out of repair for such length of time that appel-

lant would be charged with notice, appellant must answer for such defective condition. But if the appliances when installed were in proper repair, and appellant had no notice that they had become out of repair, and the exercise of reasonable diligence on its part would not have discovered that they were out of repair, there would be no neglect of duty in failing to repair. Of course the employer must know whether appliances will become out of repair through continued use, but that element does not enter into the instruction in question. The instruction tells the jury that appellant would be liable for this want of repair, and this regardless of whether it had knowledge, actual or constructive, of such want of repair. The evidence and the jury's answers to interrogatories show that the alleged defect in the switch was in the lock, and that it was a latent defect. It is quite true that the duty of appellant to provide reasonably safe appliances was a continuing one, but if a reasonably safe lock had been provided, and it afterwards got out of repair, appellant could not be charged with negligence in maintaining it in that condition unless it knew the lock was out of repair, or could have known it by the exercise of ordinary care. See *Evansville, etc., R. Co. v. Duel* (1893), 134 Ind. 156, and cases cited; *Creamery, etc., Mfg. Co. v. Hotsenpiller* (1900), 24 Ind. App. 122, and cases cited; *Pennsylvania Co. v. Congdon* (1893), 134 Ind. 226, 39 Am. St. 251; *Chicago, etc., R. Co. v. Fry* (1892), 131 Ind. 319; *Umback v. Lake Shore, etc., R. Co.* (1882), 83 Ind. 191; *Louisville, etc., R. Co. v. Orr* (1882), 84 Ind. 50; 3 Elliott, Railroads, §1268; *Culver v. South Haven, etc., R. Co.* (1904), (Mich.), 101 N. W. 663.

The fact that the court correctly stated the law in other instructions given does not cure the error. "This could only be done," said the court in *Wenning v. Teeple* (1896), 144 Ind. 189, "by plainly withdrawing the instructions named from the jury, which was not done in this case. * * * Besides, if two or more

instructions are inconsistent and calculated to mislead the jury or leave them in doubt as to the law, it is a cause for reversal." See, also, *Pittsburgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101; *Chicago, etc., R. Co.* v. *Glover* (1900), 154 Ind. 584; *Indiana Nat. Gas, etc., Co.* v. *Vauble* (1903), 31 Ind. App. 370; *Southern Ind. R. Co.* v. *Moore* (1902), 29 Ind. App. 52. The motion for a new trial should have been sustained.

Judgment reversed.