STRUBLE-WERNEKE MOTOR COMPANY, INCOR-
PORATED, *v.* METROPOLITAN SECURITIES
CORPORATION.

[No. 14,257.   Filed November 27, 1931.]

*M. C. Hamill, John Hickey* and *Frank Hamilton*, for appellant.

*Thomas F. O'Mara*, for appellee.

CURTIS, J.—This was an action by the appellee against the appellant in the trial court to replevin one Chrysler coach automobile, and to recover damages for the detention thereof. The complaint was in one paragraph in the usual statutory form, to which the appellant filed an answer in general denial and a cross-complaint in one paragraph. The cross-complaint, in substance, alleged that the appellant claimed the right to the possession of the automobile by virtue of a lien thereon for repairs, work, labor and materials furnished and performed in restoring and repairing said automobile so as to put it in operating condition, after the same had been rendered practically worthless as an automo-

bile as a result of a wreck and collision with another automobile, and asking that said lien be declared superior to any claim, lien or title held by appellee. Upon the issues thus tendered, the cause was submitted to the court for trial upon an agreed statement of facts. The court found in favor of the appellee upon its complaint and against the appellant upon its cross-complaint that the appellee was the owner of the automobile in question and entitled to the possession thereof; that the same was of the reasonable value of $600, and that the appellee was entitled to $48 for the unlawful detention thereof. Judgment was rendered for the appellee in accordance with the finding. From this judgment, the appellant appealed to this court and assigned as error the overruling of its motion for a new trial. This is the only error relied upon for reversal.

The motion for a new trial contains four grounds or reasons as follows: (1) The finding of the court is not sustained by sufficient evidence; (2) the decision of the court is not sustained by sufficient evidence; (3) the finding of the court is contrary to law; (4) the decision of the court is contrary to law.

It is earnestly urged by the appellee that no question is presented for determination in this case for the reason that the only errors assigned depend for their determination upon the evidence; that there is no condensed recital of the evidence in narrative form as required by clause 5 of Rule 22 of this court and that, therefore, this court has nothing before it. The appellant says that the evidence in the case consists of what was denominated "Agreed State of Facts." It occupies 96 printed pages of the appellant's brief, and is set out verbatim therein. It contains complete copies of long documents, a note, a mortgage, a written demand, several quotations from the Ohio statutes, a long decision of the Supreme Court of Ohio, and other mat-

ters. There was no attempt made to condense in narrative form the above evidence unless the argumentative summary made by the appellant under proposition 1 of his "Propositions, Points and Authorities" may be said to be a compliance with the rule. It was said in *Cleveland, etc., R. Co.* v. *Snow* (1905), 37 Ind. App. 646, 651, 74 N. E. 908: "What is intended as a recital of the evidence occupies seventy-six pages of appellant's printed brief. In many places are set out the questions and answers on direct, cross-examination and re-examination of witnesses, and running through this recital of the evidence are numerous arguments of counsel upon the evidence as to what it does or does not prove. There can be no doubt as to what is meant by a 'condensed recital of the evidence in narrative form so as to present the substance clearly and concisely,' nor can there be any doubt that the purpose intended to be subserved by this rule is to present the substance of the evidence as given at the trial, in a connected form and as concisely as possible. We do not think there has been such a compliance with the rule in this case as entitles appellant to a review of the question that the evidence was not sufficient to sustain the verdict." In *Indiana, etc., R. Co.* v. *Ditto* (1902), 158 Ind. 669, 672, 64 N. E. 222, it was said: "It is insisted that the verdict is contrary to law, and not sustained by sufficient evidence. These causes for a new trial, . . . depend for their determination on the evidence, . . . and 'if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, the statement shall contain a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely.'" See, also, *Franklin Ins. Co.* v. *Wolff* (1903), 30 Ind. App. 534, 66 N. E. 756; *Harrold* v. *Fuenfstueck* (1903), 31 Ind. App. 275, 67 N. E. 699. We quote as follows from *Boseker* v. *Chamberlain*

(1903), 160 Ind. 114, 118, 66 N. E. 448: "It is insisted by appellant that the evidence was not sufficient to sustain the finding of the court. Appellants are not in a position to ask a decision of this question, on account of their failure to comply with clause five rule twenty-two of this court, which requires that the statement in the brief 'shall contain a condensed recital of the evidence in narrative form, so as to present the substance clearly and concisely.'" Without doubt, the appellee in the instant case is technically correct in his contention, but we have concluded to read and consider the entire evidence in the case, upon the theory that the appellants have made a good faith attempt to present the questions. *Hill* v. *Taylor* (1917), 186 Ind. 680, 117 N. E. 930.

At the outset, it is pertinent to say that this is not an "agreed case" within the meaning of §604 Burns 1926. The stipulation between the parties was as follows: "That all the facts and admissions herein stipulated and agreed to shall be treated, considered, offered, introduced and admitted as evidence in this cause, and shall be and constitute all the evidence in the case, and further, that this instrument may be filed and made a part of the record by order of the court and not waiving the right of any party, also to make the same a part of the record by bill of exceptions." This does not constitute the evidence brought before the court by means of the above stipulation "an agreed statement of facts" within the meaning of §604 Burns 1926. Before such evidence can be treated as "an agreed statement of the facts" within the meaning of said section of the statute, the agreement must be "made out and signed by the parties," and "it must appear by affidavit that the controversy is real, and the proceedings in good faith to determine the rights of the parties." The record does not disclose the formalities that

are necessary to constitute the evidence brought before the court in the instant case an "agreed case" upon "an agreed statement of facts" within the meaning of said §604, *supra*. At most, the stipulation constitutes simply the evidence in the case, and nothing more. In *Reddick* v. *Board, etc.* (1895), 14 Ind. App. 598, 41 N. E. 834, 43 N. E. 238, in considering a stipulation similar to the one in the instant case, it was said: "When the parties agree upon the facts, as in this case, they do nothing more than to simplify the trial by obviating the necessity for making proof, and such facts when agreed to, do not constitute a special finding of facts, and an exception to a conclusion of law based upon such facts presents no question on appeal to this court." This appeal is, therefore, governed by the general appeal statutes and not by the special proceedings governing an appeal of an "agreed case" under the special statute.

It is contended by the appellant that the only questions presented by this appeal are as follows: (1) "Does the law of Indiana give a possessory lien, either common law or statutory, to a person who makes necessary and needed repairs to an automobile at the special instance and request of the owner?" (2) "If such a possessory lien exists, is it superior to and entitled to priority over the claim and lien of a prior chattel mortgage?" The appellee contends that the above two questions are not necessarily determinative of this appeal and asserts that the law of Ohio which was agreed upon between the parties in the stipulation heretofore mentioned is determinative of this appeal, and that, under the statutes and decisions of Ohio, a duly recorded prior chattel mortgage lien is superior to a subsequent repairman's lien. We do not fully agree with the contention of either the appellant or appellee as to what the exact question before us is. It is our opinion, under the facts in this case, that this court is not called upon

to decide whether or not there remains in Indiana a common-law lien for storage and for such repairs and replacements as were made in the instant case by the appellant, neither is it necessary for us to examine the law of Ohio in relation to the question of the alleged superiority of prior chattel-mortgage liens over subsequent repairmen's liens. Without deciding the question as to whether or not there still remains in Indiana a common-law lien such as is contended for by the appellant, we think the evidence in this case falls short of establishing the right of the appellant herein to have such a lien (if one exists) held, under the facts of the instant case, to be superior to the mortgage lien of the appellee.

The evidence shows: That one Russell Bass became indebted to Walter F. Wright Company on July 11, 1929, in the sum of $695.28, at Cleveland, Cuyahoga County, Ohio, for the balance of the purchase price of the automobile referred to in the pleadings, which automobile was then in said Cuyahoga County, Ohio, the home of said Bass; that, to secure the payment of such debt, said Bass executed and delivered to said Walter Wright Company the note and chattel mortgage set out in said "agreed state of facts"; that said debt was payable in 12 equal monthly installments; that said chattel mortgage was duly recorded in the recorder's office of said Cuyahoga County, Ohio, all in compliance with the laws of Ohio; that, before the maturity of said debt, the note and chattel mortgage were, for value, assigned and transferred to the appellee; that said Bass became, in October, 1929, in default in his payments as provided for by said note and mortgage; that there is now unpaid and owing to the appellee from Bass the sum of $521.46, and interest thereon; and that said Bass on December 13, 1929, executed and delivered to appellee a certain written instrument as follows: "KNOW ALL

MEN BY THESE PRESENTS, That I, Russell Bass, for the better protection of the Metropolitan Securities Corporation, mortgage by assignment of a certain Chrysler Coach automobile, Factory No. LL593H, Motor No. P186358, Model No. 65—1929 Sedan, and in order to secure more fully the payment of the said mortgage, do hereby surrender possession of said automobile to the said assignee and do hereby authorize and direct them to reclaim possession of the same for the purposes of this instrument from any person, firm, or corporation whomsoever.

"IN WITNESS WHEREOF, I hereunto set my hand this *13th* day of *Dec.* 1929.

"*Russell Bass*

"WITNESSES:

"*Paul N. Sanderson*

"*F. G. Hogen, Jr.*" (Here follows an acknowledgment which is not necessary to set out.) That the complaint in this cause was filed December 14, 1929; that the note in question contained a cognovit provision that is legal in Ohio where executed but illegal in Indiana; that said mortgage contains the following provisions: "The grantor covenants and agrees to take the best of care of the said motor vehicle and all its attachments, and keep it in first class condition and order at all times, at the expense of the grantor. The grantor shall not be the agent of the payee for any purpose whatsoever"; that, on or about August 10, 1929, said Bass drove said automobile on a pleasure trip into Indiana and Illinois, and that, on the return trip, at a point in Illinois about 60 miles west of Terre Haute, Indiana, said automobile was so damaged in a collision with another motor vehicle that it was wrecked and could not be moved from the scene of the collision by its own power and was useless as an automobile; that said Bass then requested the appellant to take possession of said automobile and

remove it to appellant's place of business in Terre Haute, Indiana, and repair the same and furnish all the necessary and needed materials, supplies and labor to restore said automobile to its condition immediately prior to said collision; that said repairs needed were neither occasioned by nor the result of ordinary wear and tear and operation of said automobile, but were made necessary because of said collision; that the appellant, acting in good faith and pursuant to said request, took charge of said automobile and made said repairs and furnished the necessary labor and material in so doing to the amount and of the value of $500, and that said repairs were for the betterment of said automobile and were necessary in order to restore said automobile to a running condition; that, after said automobile was repaired, said Bass requested the appellant to keep the same in storage, which was done from November 1, 1929, to December 12, 1929, and that a reasonable storage charge is $.50 a day; that, on November 29, 1929, the appellant notified Bass by registered mail that said automobile would be sold December 14, 1929, to pay the appellant's charges for repairs and storage; that notice of sale was given also by publication in a Terre Haute newspaper; that, pursuant to said notices, the appellant did sell said automobile at the time and place named in said notices and that the appellant purchased same for the sum of $512.21; that thereafter the Secretary of State of Indiana, upon the proof of said sale, issued to the appellant as said purchaser a license and certificate of title for said automobile, all of which is now held by the appellant; that, during all of said time, the appellant had no actual knowledge of any lien or claim of the appellee against said automobile; that the appellee did not have any knowledge that said automobile had been taken out of Cuyahoga County, Ohio, by said Bass, nor did the appellee know of said accident

or the repairs or storage furnished by the appellant until afterward; that, at the time Bass relinquished said car to the appellee on December 13, 1929, under the written relinquishment of that date, the appellee knew that said automobile had been in said wreck and had been repaired by the appellant at the request of Bass; that, before the commencement of this action, demand was made by appellee upon the appellant to deliver said automobile to the appellee, which demand was refused.

The appellant says: "Appellant most earnestly insists that under the law and the facts, it has a valid common-law possessory lien which is superior to the lien of appellee's chattel mortgage." It is contended by the appellant that *Watts, Trustee, v. Sweeney* (1891), 127 Ind. 116, 26 N. E. 680, 22 Am. St. 615, is squarely in point. In that case it is to be noted that the chattel mortgage involved therein was upon a railroad engine and other equipment of the railroad; that the engine was the only one belonging to the mortgagor and was used in operating its railroad; that, by the terms of the mortgage, it was left in the possession of the mortgagor, and, after the debt became due, it was still permitted to remain in the possession of the mortgagor to be used by him in operating the railroad and earning the money to pay the mortgage debt, and that by virtue of such use it became worn, out of repair and unfit for use, and was by the mortgagor in possession, long after the debt matured, and after there was a forfeiture of the conditions in the mortgage, intrusted to the appellee to repair. The court said: "Under such circumstances, the necessary implication was, and the fair presumption is, that the engine thus mortgaged, but retained by the mortgagor, to be used by him in earning money to pay the mortgage debt, was to be kept in repair; and the further presumption follows that it being machinery requiring skilled mechanics and machin-

ists to repair, . . . and such being the understanding of the parties to the mortgage, as fairly inferred from the nature of the machinery and use to be made of it, and permitting it to be retained and used by the mortgagor long after the mortgage debt matured and the conditions of the mortgage forfeited, the mortgagee was bound to know that such mechanic or machinist would have a lien for the amount of repairs.

"When the mortgagee intrusts machinery of the character in controversy to the custody of the mortgagor for a long period of time, to be used by the mortgagor in operating the railroad, it will be presumed against the mortgagee that all necessary repairs were contemplated, and the mortgagor was, in case of needed repairs, constituted the agent of the mortgagee in procuring such repairs, and in such case equity gives the mechanic a lien for his services and materials. The repairs add to the value of the property, and they are for the benefit of the mortgagee as well as the mortgagor." The facts of the instant case fall far short of bringing the case within the law announced in the *Watts Case, supra*. The mortgage in the instant case provided that the mortgagor should keep the automobile in repair at his own expense, and that, under no circumstances, was the mortgagor to be held to be the agent of the mortgagee. The mortgage was upon a pleasure automobile and was payable in 12 equal monthly installments and, at the time the repairs were made, there had been no default, whereas, in the *Watts Case, supra,* the engine was left with the mortgagor for a long period of time after default in the mortgage, with the understanding between the parties that it would be used to earn money to pay the mortgage debt. As throwing some light upon this case, we cite the following: *Atlas Securities Co.* v. *Grove* (1922), 79 Ind. App. 144, 137 N. E. 570; *Bowen* v. *Kokomo Omnibus Co.* (1928), 87 Ind. App. 245, 161

N. E. 298; *Metropolitan Securities Co.* v. *Orlow* (1923), 107 Ohio St. 583, 140 N. E. 306, 32 A. L. R. 992; *Ehrlich* v. *Chapple* (1924), 311 Ill. 467, 143 N. E. 61; *Cleveland Auto Top & Trimming Co.* v. *American Finance Co.* (1931), 124 Ohio St. 169, 177 N. E. 217.

The appellee contends that, since the chattel mortgage on the automobile in the instant case was executed in Ohio and duly recorded there and since the automobile at the time said mortgage was executed and delivered was located there in the county of the residence of the mortgagor and since the Ohio law as agreed upon in the "agreed state of facts" holds that the lien of a prior chattel mortgage is superior to an after-acquired lien of a materialman for repairs, this court should say that the law of Ohio controls in the instant case and is determinative of this appeal. With this contention, we do not concur. It is true that, under the comity of the states, all of them, with the possible exception of the State of Michigan (so far as our research has gone), have held by the decisions of their highest courts that when personal property, which at the time is situated in a given state, is there mortgaged by the owner, and the mortgage is duly executed and recorded in the manner required by the law of that state so as to create a valid lien, the lien remains good and effectual, although the property is removed to another state, either with or without the consent of the mortgagee, and this is so, even though the mortgage is not re-recorded in the state to which the removal is made. These decisions are all based upon the doctrine of comity, and any state would not be prevented from legislating otherwise. This doctrine has been recognized by the decisions of our state as well as by the decisions of the sister states. See: *Ames Iron Works* v. *Warren* (1881), 76 Ind. 512, 40 Am. Rep. 258, and cases cited therein; also *Shapard* v. *Hynes* (1900), 104 Fed. 449,

and cases cited therein. But we are not called upon to decide in this case whether this doctrine of comity of the states above announced would go far enough to import the law of the State of Ohio into our own state in settling the priority of the liens and rights asserted by the appellant and the appellee in the instant case, and we express no opinion in that regard. It is sufficient to say that, under our own law, the appellant has not established facts sufficient to maintain his alleged lien as a paramount lien to the appellee's rights herein.

The appellant also contends that, since the mortgage and note which Bass executed to the assignor of the appellee contained a cognovit provision, valid under the law of Ohio where it was executed, but invalid under the law of Indiana, that said cognovit note provision made the transaction void. The appellant forgets that the original transaction was an Ohio transaction and valid there and that the appellee herein, before the commencement of this action, secured from Bass a written relinquishment of all his rights to the automobile in question and that, subsequently thereto, the appellee brought this suit in Indiana. So far as the mortgage and note and the cognovit provision therein contained are concerned, they were all completely consummated in Ohio where such a provision is legal. The mortgage and note are not the basis of the replevin action in this case. The complaint herein proceeds upon the theory of ownership and right of possession in the appellee. The finding and judgment of the trial court were upon that theory.

We hold that the appellant does not have a lien superior to the rights of the appellee, and, finding no reversible error, the judgment is affirmed.