WALTON *v.* GUARDIANSHIP OF REESE WALTON, AN INCOMPETENT

[No. 18,075. Filed December 7, 1950.]

658

*Darrel L. Hodson,* of Kokomo, for appellant.

*J. L. Overson,* of Kokomo, for appellee.

DRAPER, J.—The appellant served as guardian of his nephew, Reese Walton, an incompetent person, for approximately 23 months. He then resigned and later filed his petition for fees and for reimbursement of funds advanced and expenses incurred. Following a hearing thereon, the court allowed the sum of $700 for services rendered. The appellant insists the allowance was so unreasonably small as to constitute an abuse of discretion on the part of the trial court.

First disposing of a procedural question, it seems apparent that the judgment finally determined the rights of the parties in a distinct and definite branch of the proceeding. It was, therefore, a final judgment from which the appellant could appeal without bond under Rule 2-3.

There is no substantial conflict in the evidence. The appellant's final report reflects receipts in the sum of $18,110.12 and expenditures of $17,808.96 as evidenced by 419 vouchers covering a wide variety of items. The ward owned a factory building in Kokomo and the appellant supervised said building and collected the rents. The ward also owned a fruit grove in Florida which had grown up to weeds and which was later damaged by a hurricane. The appellant went to Florida twice, staying there several months altogether, and restored, supervised and managed that property, doing much of the physical labor in connection therewith. At least one of those trips was made at the suggestion of the Judge then having supervision of the guardianship estate. The appellant performed other services for the ward which were of benefit to him and which added to his enjoyment. It seems unnecessary to set

them out in detail. He also expended some money and incurred some expense on the ward's account and used his own automobile on certain trips which were necessary or which added to the convenience and pleasure of the ward.

The appellant made his home with the ward during much of the 23 months; the appellant, the ward and the ward's nurse occupying the home together. He tended the fires, carried out the ashes, mowed and raked the lawn, brought in the groceries and such like during the time they so lived together, but the expenses all came out of the guardianship estate.

> "Every guardian shall be allowed by the court settling his accounts the amount of all his reasonable expenses incurred in the execution of his trust; and also such compensation for his services as the court shall deem reasonable." Burns' 1933, § 8-136.

> "The compensation to be allowed a guardian being within the discretion of the court, it ought to take into consideration, in making such allowance, the size of an estate, the character and amount of services required, and the conduct of the guardian in the management of the estate. No hard and fast rule can be adopted. . . . Perhaps the rule most generally adhered to in this state is five per cent for the executor, administrator or guardian . . . The five per cent is just the basic fee. It varies in accordance with the size of the estate and the amount of work done. " 1 *Henry's Probate Law and Practice*, § 709, p. 1031.

The court has a wide discretion in fixing allowances to guardians. Each case presents a different problem, and no infallible rule can be formulated or adopted. The five percent above mentioned in the quotation from *Henry's Probate Law and Practice* is not a "basic" fee in the sense that it is a minimum fee which should be allowed in each and every

case. It is a starting point—a rule of thumb. It is variable upward or downward as it may be influenced by the differing facts and circumstances of each particular case.

Obviously, some of the services rendered by the guardian in this case were extraordinary, in the sense that they were services other than and in addition to the usual and customary services which a guardian would be required to render in any and every case. Digging brush out of an orchard, pruning trees, carrying pipes for irrigation purposes and travelling about the country for the purpose of obtaining the best bid for saleable fruit were all outside the scope of a guardian's usual duties. Acts of kindness involving personal attention to the ward, such as taking him for rides in the guardian's automobile; arranging for his hospitalization and transportation to and from the hospital; driving him to Florida; arranging for and preparing a home for him there; and doing the chores around the ward's home are all in the nature of extraordinary services. All such extraordinary services, and any others shown by the evidence to have been performed, should be considered in fixing the fee.

Of the funds coming into the appellant's hands the sum of $13,735.40 represented the sale of fruit from the grove. The appellee makes the point that those funds were not paid directly to the guardian, but reached his hands in a round-about way which does not require explanation here. We think it is immaterial. It is undisputed that this income resulted largely from the guardian's efforts, and it is admitted that the guardian "did a nice job" in connection with the fruit grove, and obtained "a mighty fine yield" therefrom.

The rendition of extraordinary services and the incurring of extraordinary expense without a previous

order of the court is often undesirable and involves the risk that such may not meet with the approval of the court. But the court may approve them and order payment where he could have authorized them in the first instance.

The fact that a guardian lives with his ward at the expense of the ward should also be taken into consideration, for it would usually reduce the allowance to which the guardian would otherwise be entitled. The trial court may have taken that into consideration in this case, but here neither the length of time during which the appellant lived with the ward, nor the reasonable value of the guardian's maintenance is sufficiently shown by the evidence to form a basis for computation.

While it is not of controlling importance, it is noteworthy that the guardian who succeeded the appellant was allowed a fee of $2,400 for his services as guardian for a period of about two years. The evidence does not disclose in detail the services rendered by the successor guardian, but it fairly appears that they could hardly have equalled, and certainly did not surpass those rendered by the appellant. It would thus seem that, absent considerations such as the guardian's maintenance, the allowance to the appellant was disproportionate to the services rendered if the allowance to the successor guardian was reasonable and proper.

The court made no allowance for expenses paid by the appellant or for the use of appellant's automobile on trips which seem to have been necessary or which added to the convenience and pleasure of the ward. It is not disputed that the appellant is entitled to reimbursement for some of the expenses paid and funds advanced by him, and it would seem to us that an

allowance should also have been made in some reasonable amount for the use of appellant's automobile.

On the whole record before us we think the entire subject should be re-examined and a new allowance made. In this particular case we think the court would be justified in first determining the amount to which the appellant is entitled as a fee for ordinary services by applying the five percent formula to the income of the guardianship estate during his stewardship. In arriving at the amount he should consider, among other factors, the size of the estate, the type and character of the assets thereof, the nature and amount of the income, and many items of disbursement as evidenced by the numerous vouchers, and the time necessarily spent in the performance of his ordinary duties as guardian. A reasonable allowance for extraordinary services and for expenses should be added, and from the amount so arrived at, the reasonable value of the appellant's maintenance as shown by the evidence to be adduced, should be deducted.

Reversed and remanded with instructions to sustain appellant's motion for new trial.

NOTE.—Reported 95 N. E. 2d 301.