## GILKISON ET AL. *v*. DARLINGTON

[No. 17,844. Filed June 13, 1952. Rehearing denied August 8, 1952. Transfer denied November 13, 1952.]

*Albert H. Gavit*, of Gary, *Buschmann, Kreig, De-Vault & Alexander*, all of Indianapolis, *Leo P. Rieder*, of South Bend, *Matthew E. Welsh*, of Indianapolis, *C. Ballard Harrison*, of Hammond and *C. Wendell Hamacher*, of Crown Point, for appellant.

*Owen W. Crumpacker, Edward J. Ryan*, of Hammond for appellee Darlington. *John F. Beckman Jr.*, city attorney of Hammond, for appellees, City of Hammond, Vernon C. Anderson, Mayor et al.

ACHOR, C. J.—This is an action for injunction, filed by appellee Darlington, as a taxpayer of the City of Hammond, Indiana, in his own behalf and on behalf of the other taxpayers of the City of Hammond. The appellants are parties holding judgments against the City of Hammond, based upon the City's liability by reason of its erroneous payment of funds received by it in payment of Barrett Law assessments, upon which bonds had been issued. Precedent for such liability was determined in the case of *Read* v. *Beczkiewicz, Treasurer* (1939), 215 Ind. 365, 18 N. E. 2d 789, 19 N. E. 2d 465.

It is alleged that said judgments, totaling 124 in number, were without merit and were procured by fraud upon the trial courts, in which fraud the attor-

neys for defendant judgment holders were alleged to
have colluded with the defendant officials of the City
of Hammond, whereby the taxpayers of the City of
Hammond had been damaged.

Those parts of the prayer to the complaint, which
are material to a determination of the question pre-
sented here, are (1) that said judgments be declared
void and (2) that a permanent injunction be granted,
enjoining any further proceedings on the judgments;
(3) enjoining further prosecution of any of the causes
of action upon which the judgments were rendered,
and (4) "all further, just and equitable relief in the
premises."

Upon the court's findings of fact and conclusions of
law, judgment was rendered for appellee, as prayed.

Numerous problems are presented, which require
careful and extensive consideration by this court. The
first major question is presented by the motion
to dismiss. The first asserted grounds for dis-
missal is that the transcript and assignment of
errors was not filed within 90 days after the final ad-
judication as to *all* of the consolidated causes of action
and without a proper extension of time having been
granted, contrary to Rule 2-2 of the Supreme Court.
We do not so construe the facts in this case.

Under the issues of the case, each judgment was sub-
jected to separate consideration and adjudication under
the pleadings and evidence before the court. Therefore,
the overruling of the motion for new trial, as to those
judgment-defendants, constituted a final adjudication
as to said judgment-defendants, and they are entitled
to appeal without regard to the action of other judg-
ment-defendants. See *Gross Income Tax Div.* v. *Na-
tional Bank* (1948), 226 Ind. 293, 79 N. E. 2d 651;

*Walton* v. *Walton's Guardianship* (1950), 120 Ind. App. 656, 95 N. E. 2d 301.

As a second ground for dismissal, it is urged, in addition to the above *time* requirement, that appellants have failed to comply with Rule 2-5 of the Supreme Court. It is contended that, on the face of this court's record, the appellants have only filed part of the record in transcript form and have filed the exhibits consisting of thousands of miscellaneous, separate papers of all descriptions by merely packing them in 11 cardboard cartons; that this failure deprives this court of jurisdiction.

Whether the bill of exceptions containing the evidence is in proper form or properly certified so that it can be considered, is a matter which does not go to the jurisdiction of this court. A failure in this respect is not a ground for dismissal of the appeal, but may be ground for affirmance of the judgment where all questions depend upon the evidence. *Hunter* v. *Stump* (1948), 118 Ind. App. 84, 76 N. E. 2d 696; *Montgomery Ward & Co.* v. *Thalman* (1950), 120 Ind. App. 473, 88 N. E. 2d 53, 89 N. E. 2d 294, 93 N. E. 2d 352; *Barnard* v. *Kruzan* (1943), 221 Ind. 208, 46 N. E. 2d 238.

The exhibits were material to the case only as part of the evidence and, because of the ruling of this court regarding the sufficiency of the recital of the evidence in the briefs, it is not material to a determination of this cause that we give further consideration to the form of the transcript, with reference to these exhibits.

A further issue has been raised as to those exhibits, part of which were *original papers* in the respective cases tried and reduced to judgment in the courts below. It has been vigorously asserted that this court was in error when, in a previous

proceeding, it ordered that said original papers be made a part of the bill of exceptions in this cause. It is contended that the bill of exceptions is the property of the appellant and that, by our order, this court erroneously wrested from the trial courts their permanent public records and delivered their possession and control into the soiled hands of the appellants. The law upon this point has been grossly misstated. The bill of exceptions, although ordered by the appellants and prepared at their expense, is not their property. It is the record of the courts, of which appellants' counsel is an officer. Although the bill of exceptions is entrusted to the appellants for the purpose of filing the same with the Clerk of this court, it remains the record of the courts, subject only to such disposition as the statute and rules direct.

It is further contended as cause for dismissal that the judgments for attorneys fees, held by both Huebner and Gardner in connection with judgments taken by them in behalf of their former clients, had been assigned to attorney Gavit before the final adjudication of the cause and before the appeal to this court; that, therefore, the appeal was not filed in behalf and in the name of the real party in interest and that the appeal should be dismissed for that cause also. In regard to this latter contention, the statute and supporting cases clearly hold that an assignment of an interest after suit does not necessitate the substitution of the name of the assignee as the real party in interest. §2-227, Burns' 1946 Repl., and cases cited thereunder.

The second major issue presented is whether or not the court had authority to attack the validity of the

judgments and to grant injunctive relief therefrom. Upon this issue, it is contended by appellants first that, by the manner in which this action was filed it was, at most, an attempt to collaterally attack the several judgments for alleged fraud. We proceed to determine whether or not these actions were filed as a direct *or* collateral attack upon the judgments sought to be declared void and enjoined. These actions in the Porter Circuit Court originated by the filing of two companion complaints almost identical in terms,—one in Lake Superior Court Room 1, attacking those particular judgments which had been rendered in that court, and the other in Lake Superior Court Room 5, attacking those particular judgments which were rendered in that court, together with five judgments which were rendered in Lake Superior Court Room 2. These cases were transferred to the Porter Circuit Court pursuant to a motion for change of venue and were consolidated for trial.

It is contended that in order to constitute a direct attack, the action must be filed in the original cause itself. However, it is well established under recent decisions that an action which seeks to set aside a judgment for fraud in its procurement should be filed as a separate and independent action in the same court. *State ex rel. Roth* v. *Dickey, Judge* (1947), 225 Ind. 279, 73 N. E. 2d 765.

It is true that the relief sought in the above case was merely to set the judgment aside, whereas this is an action to nullify and enjoin the judgments and causes of action in controversy. However, both proceedings were direct attacks in equity upon judgments procured by fraud, and were subject to the same jurisdictional requirements. As stated by the following

text: "As a general rule, equitable relief against a judgment may be sought only in a court having the power and authority to consider such an application, and ordinarily, if the court which rendered the judgment has equitable powers, it is proper to bring suit in that court *to enjoin* or *set aside the judgment*." (Our italics.) 49 C. J. S., Judgments, §382, p. 759. We conclude, therefore, that the action was properly filed as a direct attack upon the judgments in issue. The grounds of the attack being extrinsic fraud upon the court in their procurement.

It is further contended, however, that, even though the actions attacking the original judgments were properly filed as a direct attack upon the actions in the Lake Superior Court, that court alone had jurisdiction to hear and determine the causes of action attacking the judgments in that court and that the Porter Circuit Court had no jurisdiction over the subject matter or the parties; that it was error on the part of the Superior Court of Lake County to sustain the motions for change of venue from the county, as a result of which the causes were certified to the Porter Circuit Court.

It is well settled that a court ordinarily has no authority to enjoin the enforcement of judgments of another court of equal jurisdiction. *Coleman* v. *Callon* (1916), 184 Ind. 204, 206, 110 N. E. 979; *Smith* v. *Largura* (1922), 79 Ind. App. 546, 134 N. E. 493; *Hofmann* v. *State* (1935), 207 Ind. 695, 194 N. E. 331; *Morgan* v. *Amick, Sheriff* (1936), 102 Ind. App. 603, 4 N. E. 2d 51. It is contended that the Porter Circuit Court, being a court of equal jurisdiction within the meaning of the rule, had no authority to enjoin the enforcement of the judgments of the Lake Superior Court.

The right to change of venue is entirely statutory. The statute, applicable to the case before us, is as follows: "The court, in term, of the judge thereof, in vacation, shall change the venue of any *civil action* upon the application of either party, made upon affidavit showing one (1) or more of the following causes: . . ." §2-1401, Burns' 1946 Repl. (Our italics.) Although there is conflicting language upon the issue in earlier cases, the question as to whether or not this is a "civil action," within the meaning of the above statute and subject to change of venue, is now settled by the recent case of *State ex rel. Bradshaw* v. *Probate Ct.* (1947), 225 Ind. 268, 271, 273, 73 N. E. 2d 769, 49 C. J. S., Judgments, §383, pp. 760, 761. See also 21 C. J. S., Courts, §501, p. 767.

All other judgment holders were brought into the case either by way of plaintiff's second paragraph of complaint, making additional parties-defendant, or by intervening petition (as in the Hamacher cases) after the cause had been certified to the Porter Circuit Court on change of venue and answers were filed thereto without objection. It has been held in this regard that by consenting to change of venue and appearing to the action in the court to which it is removed, a party waives his right to complain of any irregularity in manner of change. *Burnham* v. *Hatfield* (1838), 5 Blackf. 21; *Coman and Others* v. *The State, on the relation of Armstrong, Treasurer* (1836), 4 Blackf. 241. By the same analogy, it would seem that by appearing and answering to the action, the defendants had waived any right to complain because of any irregularity in the venue itself. We conclude, therefore, that the Lake Superior Court properly sustained appellees' motion for change of venue and that the Porter Circuit Court acquired jurisdiction as to all of

the judgments and parties-appellant. See 49 C. J. S., §383, pp. 760, 761, *supra*.

A further major issue for consideration by this court is presented by the contention that no question as to the sufficiency of evidence is before this court by appellants' briefs because of the gross violation of Rule 2-17 of the Supreme Court in appellants' statement of the evidence. Rule 2-17 is as follows:

> "The brief of appellant shall contain (a) short and clear statement disclosing: . . .
>
> "(d) A concise statement of so much of the record as fully presents every error and objection relied upon, *referring to the pages and lines* of the transcript. The record must be stated accurately and impartially. If the verdict or finding is assailed as contrary to law for lack of evidence, or as not sustained by sufficient evidence, the statement *shall contain a condensed recital of so much of the evidence in narrative form* with references to *pages and lines* of the transcript as is necessary to present accurately and concisely a *full understanding of the questions presented.* . . . Such a statement of the record and recital of the evidence will be taken to be accurate and sufficient for a full understanding of the questions presented for decision, . . ." (Our italics.)

The trial court, in its special findings of fact, found, among other things that (1) the attorneys for the judgment-plaintiffs, the attorneys for the City of Hammond, and the controller Keller H. Cochran, had agreed on the procedure to be followed, whereby they attempted to defraud the city of the sum of $958,000.00 by the taking of judgments and the payment thereof through the issuing of bonds upon the city. The court found that as a part of this conspiracy the defendant Cochran (1) participated in the meeting of August, 1946, between Huebner (whose clients held more than half the judgments), Stelley, the City Attorney, and

others; that he directed the preparation of the "Krueger audit," upon which all judgments were based, which audit was found by the court to be grossly excessive and was falsely represented to the court as having been made under the supervision of the State Board of Accounts. That another step in the fradulent scheme was (2) the issuance of a misleading prospectus by Cochran's office for the purpose of selling the bonds with which to pay off the several judgments. The court further found (3) that Cochran was informed by attorney Harrison of the fraudulent practices followed by attorneys Huebner and Gardner as to the judgments taken by them and, when so informed, he told Harrison that his judgments must be made to conform to the same pattern or they would not be allowed.

The defendant Cochran, City Controller, testified concerning the above facts and the "Krueger audit" and prospectus were introduced as part of his testimony, yet all of his testimony, including the exhibits (except as it relates to a single Harrison judgment) was completely omitted from appellants' briefs. The briefs not only omit the "Krueger audit" and the "prospectus," it does not so much as index or fix the location of these exhibits in any of the several boxes of exhibits.

A further serious defect which we must consider is the fact that fraud is admitted to have existed in the procurement of a large number of the judgments nevertheless, appellants assert the regularity of a large percent of the judgments and contend that, contrary to the "agreed" findings of fact by the court below, there is no evidence as to any fraud or irregularity in their procurement, yet their brief contains none of the complaints, findings of fact, or judgments in said cases, nor does appellants' brief so much as cite or index said

complaints, findings of fact or judgments in the several boxes of exhibits.

Furthermore, serious doubt is presented as to whether appellants have made a good-faith effort to recite the evidence contained in their brief in narrative form, as required by Rule 2-17. As to the "form" of the recital, attempt is made, at most, merely to generally summarize the substance of the evidence contained in many pages of the testimony. Furthermore, in certain instances during this purported recital of the evidence, the statements made are not attributed to any witness and, on occasion, appear to be arguments or conclusions of the appellants themselves regarding the facts in issue.

In the case before us, the sufficiency of the evidence to sustain the findings of fact by the court is put in question by the motion for new trial. Therefore, all the evidence which related to the findings of fact was material. It does not appear that appellants made a good-faith effort to recite this evidence in concise, narrative form, giving page and line as required by Rule 2-17. The law as to the sufficiency of the recital of the evidence in appellants' brief is well settled by the following cases: *Getto* v. *Getto* (1947), 117 Ind. App. 623, 625, 626, 73 N. E. 2d 350; *Wood* v. *C. & E. R. R. Co.* (1939), 215 Ind. 467, 470, 18 N. E. 2d 772, 20 N. E. 2d 642; *Baxter* v. *Meyers, Rec.* (1938), 105 Ind. App. 596, 598, 599, 15 N. E. 2d 113; *Shay* v. *Goins, et al.* (1918), 67 Ind. App. 674, 676, 119 N. E. 808; *Rose* v. *City of Jeffersonville* (1916), 185 Ind. 577, 579, 114 N. E. 85.

As stated by this court in the case of *Cleveland, etc. R. Co.* v. *Snow* (1905), 37 Ind. App. 646, 651, 74 N. E. 908:

"There can be *no doubt* as to what is meant by a 'condensed recital of the evidence in *narrative form* so as to present the substance clearly and concisely,' nor can there be any doubt that the purpose intended to be subserved by this rule is to present the substance of the evidence *as given at the trial, in a connected form* and as concisely as possible. We do not think there has been such a compliance with the rule in this case as entitles appellant to a review of the question that the evidence was not sufficient to sustain the verdict." (Our italics.)

See also, *Webster* v. *Bligh* (1912), 50 Ind. App. 56, 58, 59, 98 N. E. 73; *Alford* v. *Reid* (1944), 222 Ind. 137, 138, 139, 52 N. E. 2d 357; *First Nat. Bank of Ottawa* v. *Fraikin* (1945), 116 Ind. App. 245, 249, 62 N. E. 2d 874.

In the case of *Johnson* v. *Johnson* (1946), 117 Ind. App. 117, 118, 119, 69 N. E. 606, this court stated:

". . . The exhibits are not set out nor are we informed as to where to find them and we know nothing of their contents except the interpretation the appellant places thereon. This running recital of the evidence *abounds in conclusons* of the narrator of which the following are but a few:

" 'In these conversations appellee tried to persuade;' 'there was some discussion about appellee conveying the farm; . . .'

"This is sufficient, we think, to indicate that what the appellant offers as a condensed recital of the evidence is merely his interpretation of what the evidence discloses. Under the authority of *Lindeman* v. *Lindeman* (1937), 103 Ind. App. 494, 496, 8 N. E. 2d 1004, we hold it insufficient to present any question as to the sufficiency of the evidence to sustain the decision. As we are asked to decide nothing else, judgment below is affirmed." (Our italics.)

Appellants contend that even though their briefs do not contain a complete recital of the evidence, that

under Rules 2-17 and 2-18 it became the duty of the appellees to supply the omitted part of the evidence. In this regard, Rule 2-17 provides: ". . . Such a statement of the record and *recital of the evidence will be taken to be accurate and sufficient . . . unless the opposite party, . . . shall make necessary corrections or additions.*" (Our italics.) This issue was presented to this court in the case of *Gray* v. *James* (1935), 100 Ind. App. 257, 263, 194 N. E. 203. In that case the court stated:

> "Appellants do not deny that this evidence is omitted but say that in the event they have omitted any part of the evidence that it is the duty of appellees to *supply* the omitted parts. In this contention appellants are mistaken as it is *not* the duty of appellees to supply the omissions in appellants' brief, *but appellees have the right to assume that the rule above mentioned,* which requires an *appellant* to set out a condensed recital of the evidence in narrative form, will be uniformly enforced by the court. . . ." (Our italics.)

It is recognized that the above decision was based upon the 1924 edition of Rule 22. However, the 1949 edition of Rules 2-17 and 2-18 contain the same mandatory requirement that the brief *"Shall* contain a condensed recital of so much of the evidence in *narrative form"* and the precedent of the above cited cases is still controlling. *Evansville City Coach Lines* v. *Roger* (1951), 122 Ind. App. 119, 99 N. E. 2d 435; 102 N. E. 2d 504; *Lewis* v. *Int. Brotherhood* (1952), 122 Ind. App. 205, 102 N. E. 2d 922; *Coleman* v. *New York, Chicago & St. Louis R. Co.* (1951), 121 Ind. App. 616, 101 N. E. 2d 721.

We cannot say that appellants, in their brief, have made a good-faith effort to comply with Rule 2-17.

Therefore, this court will not consider the evidence as set forth in the brief, nor will we search the record in order to reverse, but must look only to the court's findings of fact and determine whether or not they support the court's conclusions of law.

As a further major issue is the propriety of the equitable relief granted by the trial court.

A study of the findings of fact by the court constrains us to conclude that they support the conclusion that a large number of the judgments were the result of a fraud on the part of some of the then attorneys and some of the officials of the City of Hammond, and that, generally, said judgments as rendered were unconscionable because of said fraud perpetrated upon the court and the taxpayers of the City of Hammond and, for that reason, were void, as stated in the court's conclusion of law No. 3.

However, appellants contend that the court having concluded that the judgments were void, the equitable relief available to the parties was a decree "setting aside, modifying or correcting" the erroneous judgments. Appellee on the other hand maintains that the court having taken equitable jurisdiction of the parties and subject matter properly made a complete and final determination of all issues between the parties so as to bring an end to the litigation; that therefore the injunctive relief granted against further proceedings on both the subsisting judgments and the causes of action upon which they were based was proper. The general rules regarding the character, scope and effect of judgments granting equitable relief is stated in 49 C. J. S., Judgments, Sec. 397, at pp. 788 and 789:

"On a bill for injunction or other equitable relief against a judgment at law, properly framed, the court has authority to grant the parties any and all relief to which they may appear to be entitled, although the decree should not go beyond the prayer of the petition or bill, and relief should be denied if it appears that complainant is not entitled thereto. It is within the authority of a court of equity to enjoin the enforcement of a judgment at law, whenever sufficient equitable grounds are shown, and ordinarily this is the proper method of granting relief; but in so doing the equity court does not undertake to interfere with the judgment itelf, but lays its prohibition on the party otherwise entitled to enforce it. So, if the judgment is attacked on the ground of fraud, want of notice, or other like cause, a *decree restraining its enforcement and putting the parties in status quo* will generally be proper, . . .

"In a proper case, the relief awarded may include the vacation or annulment of the judgment, *. . . the court of equity may decree a new trial and reinstatement of the cause on the docket of the law court.* It has been held that, *if a new trial is proper the court should order an issue to be tried as other issues out of chancery are tried. If the grounds of action or defense are purely legal, it has been held that the parties may be sent back to the law court for this purpose;* but, *if they are suitable for the cognizance of equity, the chancellor will generally try the merits of the cause and close the controversy by a final decree.* . . . Where it appears that any part of the judgment is justly due, the injunction may be so framed as to permit the collection of that part, while forbidding proceedings to enforce it as to the residue. However, *where there is no means of ascertaining how far it is correct or justly due, but only that it is unconscionable to some extent, it will be set aside in toto.* . . . (Our italics.)

Also, as stated at 30 C. J. S., Equity, Sec. 667, p. 1100, *"The general object of the bill (in equity) is to*

*vacate the decree in toto, and not to retry the* ■ *case, especially where a stranger to the former suit is plaintiff,* but the decree may be set aside, reversed, or modified according to the equities of the parties, . . ." (Our italics.)

The application of the above enunciated rules to the facts in the case at bar, and the rationalizing of the rules with cited Indiana cases, presents a major ■ problem in this cause. A long line of Indiana cases seems to establish the precedent of the courts of this state, not to exceed the general rule regarding the granting of permanent injunctive relief from adverse judgments. Without directly excluding the availability of injunctive relief, in such cases the courts have held that: "A judgment obtained by fraud is binding on the parties until *set aside* in some proceeding instituted for that purpose." *Palmerton* v. *Hoop* (1891), 131 Ind. 23, 28, 30 N. E. 874. (Our italics.) Also, it is an established principle of equity that even if a court is empowered to act, relief in equity goes no farther than is necessary. *Indianapolis Life Ins. Co.* v. *Lundquist* (1944), 222 Ind. 359, 53 N. E. 2d 338. Furthermore, it is generally recognized that suits to enjoin enforcement of a judgment at law are not favored by the courts of equity. *Chandler* v. *Chandler* (1945), 326 Ill. App. 670, 63 N. E. 2d 272. However, a careful examination of the findings of fact reveals that in several particulars the conduct of the appellants, which the trial court describe as *fraudulent,* was proper and such that it could not result in defrauding the City.

Furthermore, the findings of fact do not show that all the original actions were not based upon valid claims

against the City of Hammond, or that all of the parties had knowledge of the fraud practiced upon the court by their attorneys. In fact, the findings of fact contain strong inferences to the contrary. However, the court's findings of fact are so involved with generalizations and conclusions that it is impossible to determine with reasonable certainty the extent to which said judgments were grounded upon valid or invalid claims against the City of Hammond. These circumstances seem clearly to bring the case within the rule heretofore quoted from 49 C. J. S., §397, at p. 789, *supra,* as follows:

"... Where it appears that any part of the judgment is justly due, the injunction may be so framed as to permit the collection of that part, while forbidding proceedings to enforce it as to the residue. However, *where there is no means of ascertaining how far it is correct or justly due, but only that it is unconscionable to some extent, it will be set aside in toto. . . .*" (Our italics.)

We believe that within the rule above announced, substantial justice requires that in order to protect those individuals whose claims may be meritorious in whole or in part and, at the same time defeat those claims which are not valid, the court, having decreed the judgments void as entered, should have returned the parties to the *status quo* by also ordering the judgments set aside.

An issue is presented as to the propriety of the court's conclusion of law numbered 4, which stated that plaintiff was entitled to a permanent injunction against any further proceedings by the defendants upon the judgments in litigation. Because of the present status of the proceedings in this cause and the immediate and binding force of the mandate of this court upon both the parties and the trial courts, an injunction against

any further proceedings by the parties pursuant to the several consolidated judgments would serve no good purpose and, therefore, a decision upon this issue is not necessary. *Aetna Securities Co.* v. *Sickels* (1949), 120 Ind. App. 300, 90 N. E. 2d 136, 88 N. E. 2d 789.

It is urged that the Indiana cases of *Livengood* v. *Munns* (1940), 108 Ind. App. 27, 32, 27 N. E. 2d 92, and *Hitt* v. *Carr* (1921), 77 Ind. App 488, 501, 130 N. E. 1, are conclusive authority for the complete injunctive relief as granted by the court below. However, because of the variance of facts in those cases and the facts in the case at bar, we do not consider them controlling.

Under the rules stated in the above cited text, the cases are distinguishable in that this is an action *in equity* by a *third party* attacking judgments *in law.* 49 C. J. S. § 397, pp. 788, 789, *supra,* and 30 C. J. S. Equity § 667, p. 1100, *supra.* Also, in the case of *Hitt* v. *Carr, supra,* although this court granted injunctive relief under the peculiar circumstances of that case, nevertheless this court in that case reaffirmed the fundamental rule regarding the granting of injunctive relief, as follows at p. 502: ". . . The courts, however, *exercise such power with reluctance, and will never do so, unless it appears that the aggrieved party is without an adequate remedy at law, . . .*" (Our italics).

We conclude, therefore, that the extreme, absolute and permanent injunction against any further proceedings upon the claims or causes of action, upon which the several judgments were based, and against the payment of any money by the City of Hammond on account thereof, as provided in the court's conclusions of law 5, 6 and 7, and its judgments were erroneous.

In aid of the court below, we, therefore, make this summarization regarding the conclusions of law here-

in: Conclusions 1, 2, 5, 6 and 7 were erroneous for the reasons hereinbefore stated. Conclusion 3 is approved for the reasons given, and Conclusions 8 and 9 are approved without discussion. A decision regarding Conclusion numbered 4 is not necessary because of the present status of the proceedings and the mandate of this court.

It is observed that the language contained in §2-1431, Burns' 1946 Replacement, which deals with the setting aside of judgments by other courts of competent jurisdiction, uses direct and peremptory language regarding the procedure. The statute reads in part: ". . . if any judgment . . . *be set aside by the judgment* of another court of competent jurisdiction, . . ." (Our italics.) We, therefore, conclude that the trial court should have ordered the judgments set aside.

Judgment herein is therefore affirmed as to that portion which is as follows: "That each and all of those certain purported judgments against the City of Hammond, which are listed and designated in Finding No. 1, and which are further described in the other findings herein, are void."

The remaining portions of the judgment are reversed, and the cause is remanded to the trial court with instructions to restate its conclusions of law to conform with the opinion herein expressed, and that it enter judgment, setting aside all of the purported judgments so found to be void.

Crumpacker, J., not participating.

NOTE.—Reported in 106 N. E. 2d 473.