EMMCO INSURANCE COMPANY *v.* INDIANA FARMERS MUTUAL INSURANCE COMPANY.

[No. 671A115. Filed June 1, 1972. Rehearing denied July 7, 1972. Transfer denied November 20, 1972.]

*Kunz and Kunz*, of Indianapolis, for appellant.

*Charles T. Bate, Soshnick & Bate,* of Shelbyville, for appellee.

ROBERTSON, P.J.—The Associates Investment Company made application to Emmco Insurance Company (Emmco) for a policy of insurance which, in part, reads:

> "Application is hereby made to Emmco Insurance Company, . . . for a master open mobile agricultural floater policy of insurance to cover risks of direct physical loss or damage to property, consisting of . . . mobile agricultural machinery and equipment . . . which becomes the collateral for obligations of indebtedness owing to the applicant. . . ."

The policy was issued to Associates Investment Company. Associates is referred to in the policy as the "insured." Two pertinent items of the Emmco policy state that the only protected interest is that of the insured (Associates Investment Company) and the premium is to be computed on the basis of total gross unpaid time balances due to the insured on the last business day of the month.

Subsequent to the issuance of the Emmco policy to the Associates Investment Company, the Halls purchased a combine. The stipulated evidence regarding the transaction between the Halls and Mr. Stohler, the implement dealer, states that:

> "On September 10, 1964, Arthur J. Hall, Jr., Elizabeth Hall purchased a 1964 Allis-Chalmers C-11 Gleaner from

Stohler Implement Sales and by and through the assistance of your affiant (Stohler), financed said 'gleaner' with Associates Investment Company; that your affiant told Arthur J. Hall and Elizabeth Hall that your affiant could not finance the 'gleaner' through Associates Investment Company without also writing the insurance on said 'gleaner,' which Halls agreed for me to do; that your affiant was an authorized representative of Associates Investment Company for the securing of financing and insurance in connection with the sales of implements, equipment and vehicles."

A month later, the Halls increased the insurance coverage on their farm equipment from $10,000 to $40,000 under the provisions of a policy heretofore issued by the Indiana Farmers Mutual Insurance Company (Indiana) and under which the Halls were the named insureds. On the 4th of January, 1966, the combine was destroyed by fire.

Emmco made payment to Associates Investment Company by means of a check made payable to the Halls and the Associates Investment Company, and secured an executed "Amount of Damage Agreement" from the Halls which affirmed that Associates Investment Company, under the Emmco policy, was the "only insured and the party whose interests in that property are protected exclusively thereunder."

Emmco made demand upon Indiana to pay the loss under the policy the Halls purchased from Indiana. Indiana refused. Emmco filed suit, and the entire case was tried by the court under a stipulation of facts.

It should be noted at this point the Indiana policy contained a "no insurance" clause which provided for a suspension of their insurance if other insurance covered the same property. Indiana's policy did allow other insurance if their written consent was obtained. The Halls failed to do this. Emmco's policy contained a clause which would require it to be treated as excess insurance in the event other coverage existed on the same property.

The trial court found that Indiana was not required to pay, with Emmco taking this appeal.

Emmco complains of four errors: (1) The court's decision is contrary to the evidence; (2) the court's decision is contrary to law; (3) the court's decision is not supported by sufficient evidence upon all of the necessary elements of the defense raised; and, (4) an uncorrected error of law committed by the court.

Emmco has chosen, via its brief, to state the problem thusly:

"The problem is, given the two policies, which had the primary coverage. Indiana Farmers Mutual had the primary coverage because it (1) was an escape clause policy vis a vis an excess clause; (2) it was issued first in time; (3) it afforded specific coverage in contrast to Emmco's floater coverage; (4) both policies can only be given consistent meaning by so holding."

The fallacy of Emmco's concept of the problem is a misaken reliance upon the identity of the insurable interests represented by the two policies involved in the case, albeit, the identity of the property and risk insured does coincide.

The general rule of law states that before there can be contribution between insurers they must have insured the same risk and the same interest. 44 Am. Jur. 2d p. 744, Insurance § 1819 and 46 C. J. S. pp. 150, 151, Insurance § 1207. In a reading of the policies here involved, it is manifestly apparent that the interests insured are distinctly different. The entire thrust of the Emmco policy is exclusively and solely directed to the protection of the unpaid amount of loans made by the Associates Investment Company. The Halls confirmed this contention by affirmatively acknowledging Associate Investment Company's sole interest in the Emmco policy by their execution of the Amount of Damage Agreement heretofore referred to.

"It is, of course, the rule that where more than one policy of insurance covers a certain risk, the insurance companies shall contribute a proportionate part of the loss. However, in the case at bar, the two insurance companies insured separate and distinct interests in the same property and

plaintiff is not entitled to have the loss prorated." *Lititz Mutual Insurance Co.* v. *Lengacher* (7th Cir. 1957), 248 F. 2d 850, at p. 854.

We are of the opinion that the *Lititz* case, *supra,* is also dispositive of Emmco's argument that it was the property insured, not the interest, which may require contribution.

It is axiomatic, noting the separate and distinct interests insured by the respective policies, that the excess clause versus the escape clause, primary as opposed to secondary coverage, and the no insurance clause questions do not come into focus as requisite issues to the determination of this appeal.

An ancillary question raised by Emmco revolves about Indiana injecting a new defense in their post-trial briefs. The defense was based upon a clause in the Indiana policy establishing a twelve month limitation on bringing actions against the company. Since the court rendered a general verdict only we are at a loss to determine what part, if any, the issue was relied upon by the court in making the decision. The same reasoning must be applied to the objection of the trial judge raising the question, sua sponte, as to whether Emmco acted as a mere volunteer. Emmco's payment to Associates was in accord with its contractual obligation therefore they could not stand as a volunteer in this case. Since we find the trial court made a proper determination as reflected by the judgment, we cannot say that harmful error existed on these questions.

Emmco raised still another contention that the trial court committed error in failing to grant Emmco a summary judgment after denying Indiana's motion for a summary judgment. We are of the opinion that the error, if it was error, is not fatal. First, TR. 56 allows a summary judgment if appropriate. Emmco makes no showing that it would have been appropriate as a matter of law. Secondly, in view of the decision reached by this court, the outcome of the case has not been changed. The error of deny-

ing summary judgment, if error, would be harmless as defined by TR. 61.

It should be remembered that this case was decided by the trial court upon a submission of stipulated facts and certain documentary exhibits.

"* * * where the evidence is entirely based on stipulations, the Appellate Tribunal is in as good a position as the trial court to determine its force and effect." (Citing authorities) *Gorby et al., v. McEndarfer* (1963), 135 Ind. App. 74, at 80, 81; 191 N. E. 2d 786.

In addition:

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, at p. 532, 104 N. E. 2d 669.

The judgment of the trial court is affirmed.

Lybrook, J., concurs; Lowdermilk, J., dissents with opinion.

## DISSENTING OPINION

LOWDERMILK, J.—I must dissent from the majority opinion of my able colleagues.

In dissenting I find it necessary to go into the matter at great length, although the same is unusual in a dissenting opinion.

This action was commenced by plaintiff-appellant's filing its complaint; it later filed an amended complaint to which defendant-appellee filed answer in general denial. No affirmative defense or defenses were pleaded. Defendant-appellee filed a motion for summary judgment on the grounds its insured, the Halls, had another contract of insurance and defendant-appellee's coverage was thereby excluded. Later the plaintiff-appellant filed a brief in opposition to the motion for summary judgment and asked for a summary judg-

ment in its favor. The trial court, *sua sponte*, raised the issue of whether plaintiff-appellant was a "mere volunteer," although the defendant-appellee admitted in its answer that Emmco had paid to ". . . Associates Discount Corporation, Arthur J. Hall, Jr., and Elizabeth J. Hall the amount of $12,000.00 in accordance with the requirements of plaintiff's policy of insurance."

Summary judgment was denied to the defendant-appellee, but the court failed to grant summary judgment in favor of the plaintiff-appellant. Thereafter, the cause was submitted upon stipulated facts, after which the court entered judgment in favor of the defendant-appellee and that plaintiff-appellant recover nothing on its complaint.

The defendant-appellee initially raised the question of whether or not plaintiff-appellant's suit was barred by reason of the suit not being commenced within twelve months from the date of loss, as required by defendant-appellee's policy for the first time in the trial court, after the stipulation of agreed facts was submitted to the court. This objection was not passed on by the trial court, as it was never before him and such objection cannot be raised for the first time in this court. *Crescent City Aviation* v. *Beverly Bank of Chicago* (1966), 139 Ind. App. 669, 219 N. E. 2d 446.

A motion to correct errors was timely filed, was overruled, and this appeal now follows.

The facts are that Arthur J. Hall, Jr. and Elizabeth J. Hall were engaged in the operation of farming and had a blanket farm personal policy from Indiana Farmers Mutual Insurance Company to cover the equipment used in their farming operations, along with other personal property, with limits of $10,000.00.

Emmco Insurance Company issued an Open Mobil Agricultural Equipment Floater Policy to Associates Investment Company and its subsidiaries, effective July 1, 1963, to cover various farm implements and agricultural machinery and

equipment financed by Associates and its subsidiaries and which served as collateral for the loans.

The Halls, on September 10, 1964, purchased a new gleaner combine from Stohler Implement Sales, and it was financed through Associates Investment Company. The stipulated facts show that the Halls could not finance the gleaner combine through Associates Investment Company without also writing the insurance on said gleaner combine, which the Halls agreed for Stohler Implement Sales to do in order to secure the combine. Mr. Stohler was the authorized representative of Associates Investment Company for the securing of financing and insurance in connection with the sale of implements, et cetera.

Concurrently with the Halls' purchase of the combine plaintiff-appellant issued a policy to the Associates Investment Company (as stated in the policy "herein referred to as the insured") and agreed with the insured, subject to the terms and conditions of the policy, as follows:

"Item 2. INTERESTS INSURED. This policy protects only the interest of the Insured in property insured hereunder."

"Item 8. LIMITS OF LIABILITY. * * * The Company's liability shall not exceed the actual cash value of the insured property at the time of the loss or damage, and it shall not exceed a maximum combined liability of $30,000.00 on property encumbered by security instruments of one Purchaser, on any one occurrence."

The policy did cover a loss by fire.

Counsel in oral argument admitted that the charge for the insurance premium was paid by the Halls as a part of the financing of the combine. From the record I cannot ascertain if Halls knew there was additional fire insurance on the combine through the finance company. Apparently they did not know of additional insurance, as, on October 30, 1964, they increased their fire coverage on farming equipment with the Farmers Mutual to $40,000.00.

On January 4, 1966, while both policies were in full force

and effect, the gleaner was totally destroyed by fire, along with other farming equipment belonging to the Halls.

Plaintiff-appellant, upon learning of the loss, notified the defendant-appellee and made demand upon them to pay the loss under its policy. *Said demand was refused on the ground there was no coverage because the Halls had another contract of insurance.* Plaintiff-appellant's policy provided it should be excess coverage in the event of other valid and collectible insurance on the property. Indiana Farmers Mutual, defendant-appellee, denied coverage under its policy after which plaintiff-appellant paid upon its policy with Associates.

Plaintiff-appellant could elect to replace the collateral or to pay the actual cash value. They elected to pay the actual cash value of $12,000.00 for the gleaner combine, which was paid to Associates Investment Company, as required by its policy.

The check in payment for the gleaner also named the Halls as payee, which is almost universally done by insurance companies in paying their losses and claims, in order that all persons who might claim an interest or file a claim are compensated as a bar to a future claim. They may or may not require a release from all parties. This payment to Halls cannot be considered as conclusive evidence that they were insured by Emmco; neither can I determine if they received any part of said payment.

It was after this payment and formal written demand and refusal that plaintiff-appellant brought the action against the Indiana Farmers Mutual Insurance Company for the $12,000.00 which it was compelled to pay under its policy because of Indiana Farmers' refusal to pay under its policy.

The Halls never made a claim against Indiana Farmers Mutual for damages to or loss of the gleaner combine destroyed by fire. The policy issued by the plaintiff-appellant to Associates Investment Company, the same being Policy No. 11 000 004, contained a provision under which Emmco agreed to pay losses resulting to implements and equipment on which

amounts were owing to Associates by debtors who purchased said equipment.

The said policy so issued to Associates Investment Company provided coverage for losses due to damages resulting from fires, except that it also provided that Emmco "shall not be liable for loss if at the time of loss or damage there is any other valid and collectible insurance for the benefit of the insured which would have attached had this insurance not been effective, except that this insurance shall apply only as excess and in no event as contributing and then after all such other insurance has been exhausted."

On the date of the fire loss Indiana Farmers Mutual Insurance Company had in full force and effect a policy of insurance issued to the Halls, No. S 110064, and which contained the following provision:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring . . . (d) While the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

Said policy provided coverage for and protection against loss due to fire to blanket farm personal property, including implements, machinery and vehicles and was in the nature of blanket coverage without specific implements or machinery being designated, identified or rated; and section one of said policy contained the following restriction:

"Other insurance. Other insurance is prohibited unless written consent by the company is endorsed hereon."

The Halls at no time prior to and including January 4, 1966, (the date of the fire) did advise, orally or in writing, the Indiana Farmers Mutual Insurance Company, its agents or employees, that insurance had been written with Emmco Insurance Company on the 1964 gleaner combine. That Halls never at any time requested Policy No. S 110064 be endorsed

to permit the writing of insurance by Emmco Insurance Company on said combine; that Halls never requested the written consent of Indiana Farmers Mutual Insurance Company to the writing of insurance on said gleaner combine by the Emmco Insurance Company; that Policy No. S 110064, written and issued by Indiana Farmers Mutual Insurance Company was never endorsed to permit the writing of insurance on the gleaner combine by Emmco Insurance Company; that the written consent of Indiana Farmers Mutual Insurance was never obtained to the writing of insurance on the gleaner by Emmco.

On December 4, 1970, the court found the plaintiff was not entitled to recover from the defendant and ordered, adjudged and decreed that the plaintiff recover nothing of the defendant on the complaint sued on.

Thereafter, the plaintiff-appellant timely filed its motion to correct errors, which consisted of four specifications, as follows, to-wit:

"1.  The decision of the Court is not supported by sufficient evidence upon all the elements of the defenses raised.
"2.  The decision of the Court is contrary to the evidence.
"3.  The decision of the Court is contrary to law.
"4.  The Court committed an error of law in the proceedings which it failed to correct."

together with a memorandum. The motion to correct errors was overruled by the court and this appeal followed.

We have heard argument of counsel and have carefully reviewed the briefs and studied the cases cited and have made research on our own and I shall now first write on specification number three of the motion to correct errors.

I shall first distinguish between a case submitted on an agreed statement of facts and an agreed case.

In the case of *Schadle et al.* v. *Miller et al.* (1959), 131 Ind. App. 298, 301, 162 N. E. 2d 702, 170 N. E. 2d 662, the court said:

"Section 2-2201 [Burns 1968 Replacement] gives the right to all parties, with or without process, to submit any matter of controversy to the proper court upon an agreed statement of facts signed by the parties. It must appear by affidavit (or by affirmation, Acts 1959, ch. 81, § 1, p. 166; § 2-1704, Burns' Ind. Stat. [1959 Supp.]) that the controversy is real and the proceedings brought in good faith, whereupon the court may try the case and render judgment as in other cases. Section 2-2202 provides that the record shall consist of the statement of the case, the submission and the judgment. A motion for a new trial is not necessary to bring the matter up on appeal. *Fisher* v. *Purdue* (1874), 48 Ind. 323; [Citing other cases.] . . . a bill of exceptions is not necessary. *State ex rel. Osborn* v. *Eddington* (1935), 208 Ind. 160, 195 N. E. 92. Under the Rules of the Supreme Court, no exceptions to the decision of the trial court need be shown in the record. Rule 1-5. The only question on appeal is one of law as it arises upon the agreed facts. *Fisher* v. *Purdue, supra.*

". . .

"An agreed statement of facts is not necessarily regarded as an agreed case. *Struble-Werneke Motor Co.* v. *Metropolitan Sec. Corp.* (1931), 93 Ind. App. 416, 178 N. E. 460. Where a stipulated set of facts is submitted, pleadings are required and the trial is upon the issues raised by the pleadings. The facts are stipulated and agreed to instead of being proven by witnesses. On appeal the stipulation must be brought into the record by bill of exceptions, and a motion for a new trial is required to present error. [Citing cases.] . . ."

In the case at bar pleadings were filed and the issues were closed and the facts were stipulated and agreed to by the parties instead of being proven by witnesses. Under the new Supreme Court Rules adopted in 1970 a motion to correct errors was filed, all of which, taken together, necessarily makes this a case where the facts are stipulated by agreement of the parties and the case is *not* an agreed case.

The appellants have properly brought this matter before this court under an agreed statement of facts and the same shall be passed upon by this court under the same rules and statutes and by the precedent of prior cases that applies to an agreed case.

". . . The facts being agreed upon, a new trial could make no change in them. The facts having been ascertained, there is no question for decision, except the law as it arises upon the facts agreed upon. The question is one of law, and not of fact or of fact and law. The case is, in substance, the same as where there is a demurrer to the evidence or a special verdict, in which cases the only duty which the court has to perform is to determine the law applicable to the facts as they are in the record." *Fisher* v. *Purdue* (1874), 48 Ind. 323, 326.

In the case of *Indiana Bk. & Tr. Co.* v. *Lincoln Nat. Bk., etc.* (1965), 137 Ind. App. 546, 553, 206 N. E. 2d 879, which was a case concerning forged checks and which was tried on stipulation of facts and a deposition, this court said:

"The case below was tried on the stipulation of facts and a deposition and thereby leaves us with the responsibility of considering whether or not the facts so presented support the finding and judgment of the trial court. Where the evidence is entirely documentary or the decision is based upon admission or stipulation, the Appellate Tribunal is in as good a position as the trial court to determine its force and effect. *F. W. & H. Ind. Tr. & App. Pract.* § 2786; *Sullenger* v. *Baecher* (1913), 55 Ind. App. 365, 101 N. E. 517 (transfer denied), *F. W. & H. Ind. Tr. & App. Pract.* § 1760 and § 1969; *Gorby* v. *McEndarfer* (1963), 135 Ind. App. 74, 191 N. E. 2d 786, 790."

I have now determined that it is the law in Indiana that the Court of Appeals is in as good a position as a trial court to determine the force and effect of the evidence where the case is entirely documentary and the decision is based upon a stipulation of facts and admissions in the pleadings. *Pomerenke* v. *National Life & Acc. Ins. Co.* (1968), 143 Ind. App. 472, 241 N. E. 2d 390.

I have also determined that the only question before the trial court was a question of law and that this court is now in as good a position as the trial court to determine the force and effect of the evidence on the determination of the question of law and I shall proceed thereon as duty requires me to do.

I have further determined that there are two distinct legal reasons which make the decision of the trial court contrary to law. I shall treat each of them in this opinion in an attempt to give clarity to fire insurance policies and the obligations and liabilities incurred by the separate companies writing separate policies on the same property of a named assured.

In looking to the individual defenses of the companies, I have determined that the Emmco Insurance Company has relied upon a defense of the Associated Investment Company being its assured. Emmco claims that it insured the loan company and therefore Halls only have an equitable interest in the policy which would only come to life in case of a loss of the combine by fire. The policy holder, assured, was the loan company only, the policy being to protect Associates' loan on the gleaner.

Emmco further contends that is to true even though the Halls paid the premiums for the policy as a charge in the financing of the gleaner. (The stipulation shows Halls paid insurance premiums to Emmco through Stohler, the implement dealer.) Emmco, therefore, argues that it is only liable as an excess insurer, inasmuch as there was other valid and collectible insurance for the benefit of the insured.

Farmers Mutual relies upon a defense of the Halls' breaching their contract by procuring additional insurance without consent. They necessarily contend that the Halls and Associates are one and the same assured and that, therefore, their policy having been breached, it is not in effect.

With this contention I cannot agree, as Halls and Associates are not one and the same assured. I do agree that Halls and Associates each did have an insurable interest in the combine, which was destroyed by fire, and each of which insurable interests was in effect at the time of the fire loss.

Black's Law Dictionary, 4th ed., defines *insurable interest* as follows:

"Such a real and substantial interest in specific property as will prevent a contract to indemnify the person interested against its loss from being a mere wager policy. [cases cited.] Such an interest as will make the loss of the property of pecuniary damage to the insured; a right, benefit, or advantage arising out of the property or dependent thereon, or any liability in respect thereof, or any relation thereto or concern therein, of such a nature that it might be so affected by the contemplated peril as to directly damnify the insured."

C. J. S., Vol. 44, Insurance, § 175, p. 870, defines *insurable interest* as follows:

"A person usually has an insurable interest in the subject matter insured where he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against."

I. L. E., Vol. 16, p. 210, Insurance, § 72, provides:

"Various persons have been held to have an insurable interest in property, including a bailee, a life tenant, a mortgagor, and a mortgagee. A grantee who, in good faith, has gone into possession of land claiming to be the owner in fee simple has an insurable interest, since as long as no other person asserts an adverse interest in the property his title is good with respect to the insurer."

In the case of *Farmers' Mut. Ins. Co. v. Young* (1937), 104 Ind. App. 139, 10 N. E. 2d 421, Mary Alice Young and Olive Lorene Young were the owners of real property purchased under a contract whereby they agreed to pay certain sums on specified dates until paid and at which time they would receive a warranty deed. The Youngs were to keep the buildings insured to the satisfaction of the bank which sold them the property. The policy sued on was issued and the loss payable clause inserted. The bank had the house insured for $600.00 with Hartford Fire Insurance Company for three years. Within two months after the contract of sale to the Youngs, at the request of the bank, the Hartford Fire Insurance Company caused a loss payable clause to be attached to the bank's

policy to "Mary Alice and Olive Lorene Young as their interests may appear under a contract of purchase." This policy was in full force and effect from that time to and including the date of the fire and that "insured the interests of the plaintiff (Youngs) and of defendant" bank. That by the policy sued on it was stipulated that "any insurance placed upon the property insured by this company without its knowledge invalidates the insurance in said company to the amount of the insurance so placed, also, if any insured misrepresents to us that he had no insurance that is more than that written by the former company."

The amended complaint further alleges that the appellant, Farmers Mutual, had no knowledge or notice of the existence of the Hartford policy until after the loss. The appellant was liable for only $400.00 which they tendered to the court, together with sixty cents for the payment of Youngs to join their mutual company.

A demurrer was filed to the complaint to the effect that there was no allegation in said answer that at the time the Youngs applied for the insurance with the appellant they had any knowledge of the existence of the Hartford policy and that the answer does not allege that the Hartford policy was taken out with the consent or knowledge of the Youngs.

It is true the policy contained a question asking if there was any other insurance, to which the answer was "none."

Appellant Farmers Mutual contended that Young and Young misrepresented the facts as to other insurance and since there was other insurance outstanding out under the latter part of the above quoted clause the appellant would only be liable for a certain amount of the insurance, namely, the difference between the amount of their policy and that of the Hartford company.

That court said:

". . . Insurance contracts must be construed most strictly against the insurer and liberally as to the insured to the

end that the contract attempted to be entered into may be enforced. . . ."

The court further said that the Youngs did not warrant there was no other outstanding insurance on the property; they answered the question about insurance in the negative, and at the time they did so they had no other insurance, nor did they, so far as the record and allegations disclose, since that time, acquire any other insurance. The court said:

"*. . . It is fundamental that there may be several distinct interests in property which may be insured and it has been held that mortgagor and mortgagee have such separate interests as may be insured. . . .*"

The court further said that it was not seriously contended by appellant that appellees Young and Young did procure other insurance but the contention is that since the bank had this outstanding policy at the time the contract of sale was entered into that under the answer to the above question the appellees Young and Young must be said to have misrepresented the fact that they had other insurance and that since there was other insurance outstanding they are presumed to have known as much when they answered the question. The court, speaking further, said:

"*. . . It seems clear to us that the Youngs did not have any other insurance and that they did not directly or indirectly place other insurance on the property nor is there any allegation that the bank assumed to act as agent for the Youngs in the acquisition of additional insurance or that they were so acting as agents of the Youngs when they caused the loss clause to be attached to the Hartford Fire Insurance Company policy.*" (Our emphasis.)

Farmers Mutual contended that there was double insurance, to which contention this court stated there was complete lack of allegations that the Youngs either procured such insurance, authorized it or knew it had been procured or even sought or contemplated any benefit therefrom and the judgment of the trial court was affirmed.

In the case at bar the Associates had an insurable interest which they protected through implement dealer, Stohler, by the forced sale of a fire policy to cover the amount due on the purchase price of the combine. The record fails to convince this court that the Halls procured the insurance with Emmco to protect Associates and fails to show they authorized or knew it had been procured, and further fails to show Halls even sought it, and they did not contemplate any benefit from such insurance, as it was a part of the package deal and an incident to the financing of the combine which, as I have heretofore stated in this opinion, they were forced to pay in order to purchase the combined. This is evidenced further by the fact, as elsewhere related in this opinion, that they increased a fire policy on farm equipment with the Farmers Mutual from $10,000 to $40,000 immediately after the purchase of the combine; and further, after the fire loss the Associates made proof of loss and demanded the payment of the balance due on the combine from Emmco.

It is my further opinion that even though the Halls had procured the additional insurance from Emmco, Farmers Mutual's defense on a breach of its policy is not a valid defense and would be unavailing to them and as authority for my reasoning I relate the following cases.

I cite the case of *St. Paul Fire & M. Ins. Co.* v. *Garza County W. & M. Ass'n* (1937), 5th Cir., 93 F. 2d 590. In this case, there was a question as to which of two insurance companies were responsible for 35 bales of cotton and an additional 119 bales of cotton insured by the Commodity Credit Corporation as it was holding them in a warehouse. The court said:

"As to the Commodity Credit cotton, we are of the opposite opinion. We think it clear that the Hartford policy on that cotton was not 'other insurance' within the meaning of the clause; that Commodity Credit was not the owner of the cotton, and that it did not secure the insurance as agent, or for the benefit of the owner; and that, whatever the nature of the Hartford policy as to it, that policy was not 'owner's insurance' within the excepting clause."

The court, speaking further, said:

"The District Judge found, upon evidence fully supporting the finding, that the Hartford insurance was not owner's insurance in that sense; that it was pledgee's insurance, taken out by the pledgee, to protect its interest. It is settled law that such insurance is not within the prohibition of other insurance by the owner. [Citing cases.]"

I therefore hold that Emmco's policy, as taken out by the implement dealer, was pledgee's (Associates) insurance, taken out by the pledgee to protect its interest. Such being the case, I am of the further opinion that Emmco's policy is not within the prohibition of other insurance by the owners, Halls, which was with the defendant-appellee, Farmers Mutual.

Defendant-appellee relies on the case of *Farmers Mutual Insurance Company* v. *Summers and American States Insurance Company* (1968), 143 Ind. App. 450, 241 N. E. 154. Summers insured his home and contents with Farmers Mutual and then he (Summers) bought an additional policy covering the home and contents with American States. The Farmers Mutual policy had the provision that it would not be liable while the insured had another contract of insurance on the same property unless provided in writing added to the Farmers Mutual policy. (The same clause is involved in the case at bar.)

This case is not in point with the case at bar, as Summers was the named assured in each of the policies and in the case at bar each policy covers a separate named assured.

Firstly, I have determined that each policy had an escape clause by which, if it were successful, it could avoid payment to its assured who had paid a valid consideration for the premiums charged by each of the companies. In determining whether the escape clauses were valid and enforceable I look to each of the policies; I have determined that the defendant-appellee Indiana Farmers Mutual Insurance Company policy had a clause which prevented the risk from ever attaching, i.e., in cases, such as the case at bar, wherein the same

property is insured by more than one company without consent of the Indiana Farmers Mutual Insurance Company:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring : . . (d) While the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

It must be fully noted that Halls, the insureds, did not have this policy. It was Associates that had the policy as a pledgee.

From a history of decisions on this point I have determined that the effect of this clause offers the defendant-appellee two choices. The defendant-appellee may either seasonably return the premiums after notice of additional insurance by another company on the same personal property insured by defendant-appellee and rely on the breach of the policy and cancel the policy theretofore issued, or it may retain the premiums and in such case it waives the provisions of "other insurance" and cannot defend an action under its policy in the event of loss on the grounds that there was a breach of the conditions of the policy.

In the case of *Ohio, etc., Ins. Co.* v. *Williams* (1916), 63 Ind. App. 435, 112 N. E. 556, the plaintiff-appellee recovered judgment against the appellant upon an insurance policy issued by appellant against loss by fire or lightning of certain chattel property owned by plaintiff-appellee.

The consideration of the premium was $39.00; a loss was had and all the personal property covered by the policy was destroyed by fire. A compliance with the conditions of the policy was pleaded; a part of the stipulations of the policy material to the question presented for consideration stated:

"This entire policy, unless otherwise provided by agreement, endorsed hereon added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy, etc."

It must be fully noted that Halls, the insureds, did not have this policy. It was Associates that had the policy as a pledgee.

Defendant-appellant's answer embodied the above stipulation of the policy and in substance alleged that the plaintiff-appellee violated said stipulation by procuring additional insurance from another insurance company of Indiana, in the absence of an agreement authorizing the same, as provided by the policy.

Appellant took the position that appellee's procuring additional insurance in the manner and under the circumstances set forth in appellant's answer, under consideration, breached a condition of the policy which relieved appellant from liability. The contention was, further,

> ". . . the reason underlying the insertion of a stipulation such as here under consideration in policies of insurance covering indemnity for loss by fire is to prevent over-insurance, and 'upon the assumption that the insured will be less careful to protect his property from loss in proportion as to the amount his insurance is increased,' and further that the moral hazard should not be increased without the knowledge of the insurer. [Citing cases.]"

As has been previously stated, Emmco Insurance Company is relying upon a defense that the Halls were not the assureds in their contract and, therefore, the "escape clause" of Farmers Mutual would not apply since the Halls did not own any other insurance.

Farmers Mutual's defense is based on the allegation that the purchase of Emmco's policy on the combine by Halls rendered the Farmers Mutual contract ineffectual.

As a matter of law, if the policy of Farmers Mutual was ineffectual as to the combine, and, relying upon Farmers Mutual's allegation that the Halls owned the Emmco policy, the Farmers Mutual policy, with respect to the combine, was ineffectual from its inception, and so rendered Farmers Mutual's policy such that no risk attached and, therefore, there was no consideration for the premium received by Farmers

Mutual. Consequently, Farmers Mutual, upon learning of the supposed breach of its contract, should have seasonably tendered back to its assureds the premium received by it; and failing so to do, Farmers Mutual cannot insist upon a forfeiture of the policy and is bound by the policy from its inception, including all additional coverage afforded the assureds by the increase of $30,000 principal coverage after the Halls purchased the gleaner.

This court, in *Ohio, etc. Ins. Co.* v. *Williams, supra,* held that such stipulations are regarded as valid and reasonable, and when violated the insurer may, when a loss occurs, defend on the ground of a breach of the contract in this respect. *Appellee's main objection to the answer was that the procuring of additional insurance did not render the contract void, but only voidable at the election of the insurer, and hence it became the appellant's duty as a condition precedent to defend upon this ground to return, or offer to return, the unearned portion of the premium, and that the absence of such averment in the answer rendered its insufficient to state a defense to the complaint.*

"Appellee's contention that the stipulation against procuring additional insurance does not render the policy void, but voidable at the election of the insured, is as well as kindred stipulations, abundantly supported by the authorities. [Citing many cases.]"

This court, in passing on this question, said:

"This as well as the Supreme Court and the courts of other jurisdictions generally have frequently held that both as to fire and life insurance policies, where a defense is based upon a breach of the policy that renders the contract ineffectual from its inception, and where, in fact no risk attached, that under such circumstances there is no consideration for the premium received, and that the insurer upon learning of the breach should seasonably offer to restore the premium received by it; and failing to do so, it could not insist upon a forfeiture of the policy. *Glens Falls Ins. Co.* v. *Michael, supra; Catholic Order of Foresters* v. *Collins* (1912), 51 Ind. App. 285, 99 N. E. 745."

The court, speaking further, said:

" 'Premiums paid to secure insurance cannot be recovered if the risk has once attached. If a policy is valid at its inception, then the company cannot be required to refund the premiums received.' [Citing cases.]"

The court further said:

"Both upon authority and reason it seems that appellant's action in denying liability, by reason of the conduct of appellee in effecting other insurance, cannot be treated as a cancellation of the policy, calling for a return of the pro rata share of the premium for the time between the date appellee effected the insurance to the date when the policy would expire, as disclosed upon its face. This disposes of the main question presented for consideration, and in so concluding, we are mindful that contracts of insurance, such as are here under consideration, are strictly construed as against the insurer, so as to prevent a forfeiture of the contract, and liaberally construed in favor of the insured to the end that the contract serve the purpose for which it was intended—that of indemnity in case of loss. But the provision here under consideration against procuring additional insurance is clearly expressed and in unambiguous terms, and to disregard the same would be to disregard the contract entered into between the parties. Additional insurance having been procured, and the loss having occurred thereafter, which is disclosed by the answer under consideration, the same states a defense to the complaint. . . ."

This court was further presented with other affirmative paragraphs of answer and replies thereto. The trial court carried the demurrer addressed to the replies back and sustained the same to the paragraphs of answer to which the replies were addressed respectively. This court held that the judgment should be reversed on these procedural grounds, which does not affect its decision with respect to insurance companies having an "escape clause" where additional insurance is acquired without knowledge or consent of the original insurer.

*Security Underwriters, Inc.* v. *Long* (1929), 96 Ind. App. 9, 170 N. E. 355, is a case wherein the plaintiff-appellee owned

an International truck on which the International Harvester Company held a mortgage. It is averred in the complaint that plaintiff-appellee was solicited by the Security Underwriters, Inc. for insurance on said truck and offered to write insurance thereon and inquired of the appellee all the facts concerning the same and appellee advised appellant company and its officers and agents that there was a mortgage thereon to secure the unpaid balance of the purchase price, which mortgage was executed to the International Harvester Company. Plaintiff-appellee gave the association all the information requested and made a full, true statement of all conditions concerning the truck; that thereafter said association through its attorney in fact, Security Underwriters, Inc., appellant, executed a policy of insurance to plaintiff-appellee insuring said truck and accessories against loss by fire and for which plaintiff-appellee paid the premium. Six days later the truck caught on fire and burned with all its accessories; that within sixty days after the said loss plaintiff-appellee duly submitted proof of loss to appellant company, with a written statement signed and sworn to stating all the facts which he knew concerning said truck and said fire and the interest of appellee in said property, the encumbrances thereon and all other facts called for by said policy of insurance, which statement was duly signed and sworn to by plaintiff-appellee.

Defendant-appellant made an investigation but never reported to plaintiff-appellee; the property was worth $800 or more and plaintiff-appellee had been damaged $800 and had performed all conditions of the contract on his part to be performed; that defendant-appellant has wholly refused to pay said insurance or any part thereof.

A copy of the policy and application was made a part of the complaint and by said policy, under "Separate Warranties" appellee warranted the automobile was owned by appellee and was not mortgaged or encumbered.

Defendant-appellant demurred to the complaint for want of facts in that the complaint showed on its face that plaintiff-

appellee had violated the contract on which he was sueing at the time he entered into it; that appellee made a false warranty at said time; that the complaint did not show the alleged inaccuracies set out were made through mistake.

The court overruled the demurrer and the cause was tried to a jury on plaintiff's complaint, answer of denial and an affirmative paragraph of answer pleading the above mentioned breach of warranty as to the mortgage, along with other alleged breaches to which a reply of denial was filed.

This court held that the error in overruling the demurrer, even if committed, was harmless, for the reason that the court must look to the whole record to determine if error in overruling a demurrer was prejudicial or harmless and if it appears therefrom that a case was fairly tried upon its merits and a right result reached, the error of the court would be held to be harmless.

In the trial of the cause uncontradicted evidence was admitted without objection that appellant was fully informed of the mortgage on the automobile by letter from International Harvester Company of America and it further appears by the evidence that it knew of the other alleged breaches of warranty of which it complains and thereafter it accepted a premium on the policy, this, of course, with full knowledge of the breaches of warranty aforesaid of which it complains.

The court stated the law on this subject as follows:

". . . Appellant had its option, when it discovered the breaches of warranties aforesaid, to avoid the policy or to waive the breaches. In the event that it chose to rescind, it was its duty then and there, not only to refuse to accept further premiums, but to tender back the premiums which it had already received. *Having failed in this regard, it thereby elected to waive the breaches.*"

In the case at bar the record is silent as to any tender of premiums back to the Halls at any time by Farmers Mutual.

In my opinion, it is elementary from a review of the stipulated facts and the clause in the Farmers Mutual Insurance

Co. policy "Conditions suspending or restricting insurance" that since the gleaner combine was insured with Emmco Insurance Company at the time it was purchased and financed by Associates Investment Company, the risk of loss for the gleaner combine never attached under the Farmers Mutual policy. Inasmuch as the risk of loss never attached, Farmers Mutual, upon learning of the breach of its contract, had two options, i.e., (1) seasonably returning the premiums that it had received in the proportion which the combine would have represented on the assets insured by the defendant-appellee, or (2) to waive the breach of the contract and continue to retain and accept premiums. The defendant-appellee having failed to seasonably return the previous insurance premiums received pro rata on the gleaner combine, it is now estopped from asserting that the contract is not in full force and effect.

I have, therefore, now determined that at the time of the destruction of the gleaner combine by fire the policies of Indiana Farmers Mutual Insurance Company and Emmco Insurance Company were both in full force and effect on said gleaner. Farmers Mutual's policy is still in effect since (1) the Halls did not procure "other insurance" within the meaning of the Farmers Mutual policy; and (2) even had the Halls procured additional insurance the same would have made Farmers Mutual's policy one with which the risk did not attach from its inception and the failure of Farmers Mutual to seasonably return the portion of the premium represented by the combine estops them from raising the defense of a breach now. *Ohio Security etc. Co.* v. *Williams, supra; Security Underwriters* v. *Long, supra.*

After having reached the above decision I am still confronted with the question of which of the two companies, or if both companies, should make payment for the loss.

Appellee contends that since no special findings of fact and conclusions of law thereon were requested or made by the trial court that under the circumstances the test set forth in the

case of *State Farm Mutual Automobile Insurance Company* v. *Mid-Century Insurance Company, et al.* (1970), 147 Ind. App. 258, 259 N. E. 2d 424 should be applied. In said cause the court cited and quoted from the landmark case of *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669, and defined when a decision is contrary to law.

Appellee contends that the foregoing tests clearly show that the decision of the trial court was not contrary to the evidence nor contrary to law in the case at bar.

In *State Farm Mutual* v. *Mid-Century, supra,* the court said that the question presented is,

"(1) * * * (2) that it would be an unjust enrichment for appellant to collect a premium from the injured person and then recover back the benefits which the premium had purchased; (3) the provision relied upon by appellant is unenforceable because of its lack of mutuality; (4) defects of parties in that defendants are not proper parties; (5) separating of causes of action, which is not permitted, as well as other contentions."

The facts, briefly, are in that case the assured's wife was driving his automobile which had medical endorsement coverage and she was involved in a collision with a third party, which third party settled with the assured and his injured wife for $7,850 for her personal injuries and his property damage. There was no evidence before the court from which the court could have determined that the subrogation claim of the appellant of $345.36 was or was not included in said settlement.

The court in that case held that damages consisted of many items and it could not be determined if the $345.36 was included in the total payment of $7,850.

The court applied the test as set out in *Pokraka* v. *Lummus Co., supra,* and found that the evidence was without conflict and there was no evidence before the trial court that the subrogation payment of $345.36 was included in the aggregate amount paid to the Hiltons, and, further, there was no evidence in the record establishing just what items made

up the total payment of $7,850, and this court affirmed the trial court.

We distinguish the case at bar from *State Farm* v. *Mid-Century, supra,* as the latter case was tried to the court without a jury and the case at bar was tried on facts stipulated by the parties without the court hearing any additional evidence and which, under the many authorities cited, fully authorizes this court to weigh and determine the evidence the same as the trial court.

Secondly, although it is repetitious, I again set out that this cause was submitted to the trial court on a stipulation of facts. This being the case, I am left with the responsibility of considering whether or not the facts so presented by the parties support the finding and judgment of the trial court. There is no question of admissibility, relevancy or probative value of the evidence. I am, in effect, being asked to weigh the evidence and substitute my judgment for that of the trial court. Our Supreme Court and this court have repeatedly held that the appeals courts of Indiana cannot weigh evidence, either oral or written.

As this court said in *Gorby et al.* v. *McEndarfer* (1963), 135 Ind. App. 74, 80, 81, 191 N. E. 2d 786:

"... but where the evidence is entirely based on stipulations, the Appellate Tribunal is in as good a position as the trial court to determine its force and effect. Flanagan, Wiltrout and Hamilton's, *Indiana Trial and Appellate Practice,* § 2786 and cases therein cited.

"The second proposition namely that the decision was contrary to law, requires us to determine whether or not the appellant was denied the relief to which he was entitled under the evidence. That portion of the evidence which we may consider has been limited by the decision of the Supreme Court of Indiana in the case of *Hinds, Executor, etc.* v. *McNair, et al.* (1955), 235 Ind. 34, 129 N. E. 2d 553, in that case the court said:

" 'If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law. To determine this

question we may consider only the evidence most favorable to the appellees, together with all reasonable inferences which may be drawn therefrom.

" ' "It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.' "

*City of Angola* v. *Hulbert et al.* (1959), 130 Ind. App. 97, 162 N. E. 2d 324, is to the same effect.

The trial judge *sua sponte* raised the question as to whether plaintiff-appellant Emmco was a volunteer contributor to the Halls. In my opinion the stipulation of facts and briefs of the parties are insufficient to show that the Halls ever received any money from Emmco, although their names were on the check issued to Associates Discount Company, a subsidiary of Associates Investment, as full payment for the loss of the combine.

The naming of the Halls on the check and their subsequent endorsement thereon would constitute a defense against any subsequent claim they might make on the policy that Emmco wrote for Associates to protect Associates on their loan to Halls and which policy at no time did the Halls own. This policy was owned by Associates and for their protection under their loan and for no other reason.

As heretofore stated, I have made a careful examination of the language and facts set out in the stipulation in the case at bar.

I must now construe the two suspending and restricting (escape) clauses of the respective policies as the same pertains to other insurance, whether the same is valid or not, and determine which of the two companies shall assume the burden of and pay the loss, or I have the further burden of determining if each of the two companies is primarily liable on the pro rata share of the loss based upon the premiums charged by the respective companies.

I have heretofore set out the "escape clause" of defendant-appellee's fire policy and now, in being consistent, I set out the other insurance "escape clause" of the plaintiff-appellant, Emmco Insurance Company, which is in the words and figures as follows, to-wit:

"Item 9. OTHER INSURANCE. The Company shall not be liable for loss if, at the time of loss or damage, there is any other valid and collectible insurance for the benefit of the Insured which would attach if this insurance had not been affected, except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all such other insurance has been exhausted."

We now reaffirm the court's prior statement and conclusion that this litigation is an action limited to the two insurance companies named in the caption of the action.

Emmco Insurance Company wrote a fire policy on a gleaner combine sold by their agent in his capacity as an implement dealer, with Associates Investment Company being the sole named assured.

Indiana Farmers Mutual Insurance Company wrote a blanket fire policy on farm equipment, the property of the Halls, which later included the gleaner combine in the blanket farm policy purchased by the Halls.

Inasmuch as excess coverage and escape clauses are discussed in the briefs of the parties, I have heretofore discussed them at some length. I frankly admit I did not find an Indiana case exactly in point on this. However, the question of excess coverage is well discussed in the case of *New Amsterdam Cas. Co.* v. *Certain Underwriters at Lloyds, London* (1966), Supreme Court of Illinois, 216 N. E. 2d 665. In *New Amsterdam* the court determined the responsibilities and obligations of the insurance companies, wherein one Fiske was involved in an accident while driving a rented automobile belonging to Hav-A-Kar, an auto rental agency, which automobile was insured by Lloyds of London. The other

driver, Chuinard, who was involved in the accident, sued Fiske, who forwarded summons to New Amsterdam.

Lloyds refused to defend Fiske and the plaintiff (New Amsterdam) proceeded with the defense. The action was settled and this action was for the amount paid in settlement and expenses.

Under Fiske's policy on his own car there was a provision "Use of Other Automobiles" and "Other Insurance." The "Other Insurance" provision of the policy provided that other automobiles under the insuring agreement of use of other automobiles shall be excess insurance over any valid and collectible insurance available to insured, either as an insured under a policy applicable with respect to said automobile or otherwise.

Lloyds had issued a blanket policy to Hav-A-Kar covering all their vehicles and which policy was in force and effect at the time of the accident. This policy contained the usual omnibus clause and had an "other insurance clause" as follows:

"* * * If any person, firm, or corporation other than the Assured named in the Schedule is, under the terms of this policy, entitled to be indemnified hereunder and is also covered by other valid and collectible insurance, such other person, firm, or corporation shall not be indemnified under this policy."

Both parties agreed that Fiske was driving the rented car with permission and that had either policy been in force without the existence of the other, either company would have assumed full liability under its policy. The question presented was what effect the "other insurance" clauses have, if any, as to the ultimate liability for the damages.

The plaintiff contended that it provided excess insurance coverage only and would be responsible only after Lloyds exhausted all its coverage.

Lloyds contended Fiske was covered by "other valid and collectible insurance" at the time of the accident by Fiske's

own policy and therefore Lloyds provided no coverage by virtue of its "other insurance clause" (known as an "escape clause") specifically denying coverage should other valid and collectible insurance be available. Lloyds also argued in the alternative that should the court not hold the plaintiff primarily liable the loss should be prorated between the two insurers. The court held that the majority view seems to be that in the case of an apparent conflict between an "escape" clause in one policy and an "excess" clause in the other policy, the "excess" clause is to be given effect. 46 A. L. R. 2d 1163. The court relied upon and cited the case of *Zurich General Accident and Liability Ins. Co.* v. *Clamor* (7th Cir.), 124 F. 2d 717, in which case the court said the automobile owner's insurer provided coverage for a person driving the car with permission if he did not have other valid and collectible insurance, and the driver's insurer provided coverage for him while driving another's car with permission, except that the insurance constituted only "excess insurance" over any other valid and collectible insurance available to the insured. The court held the owner's insurer liable since the driver's "excess insurance" was not other collectible insurance. (Stated differently, the "excess insurance" provided by the driver's insurer is not "other insurance" as required by the owner's insurer to exempt the latter from liability.) The court said that in order to give effect to the difference in the "other insurance" provisions of the two policies, it was logical to conclude that the owner's insurer was liable to the extent named in its policy, and that the driver's insurer was liable only for any excess over that provided by the owner's insurer.

The court then held that Fiske's insurance while driving the car involved in the accident with the permission of the named insured was covered under plaintiff's extended insurance only for the excess insurance over the valid collectible insurance available to him under the omnibus provision of the Lloyds policy.

"... *Lloyds does not escape through use of the clause denying liability if any person other than the named insured is also covered by other valid and collectible insurance, because plaintiff's policy was not 'other' insurance but rather 'excess' coverage."* (Our emphasis.)

Lloyd's policy was in excess of the amount of the damages and the plaintiff's excess insurance never came into force.

The court further held:

"... As long as defendant disclaimed coverage and refused to defend Fiske, there was no admitted or established 'other valid and collectible' insurance."

The court, in quoting further from the case of *American Surety Co. of N. Y.* v. *Canal Ins. Co.*, 4 Cir., 258 F. 2d 934, said:

" '... Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape.' "

The court in the *New Amsterdam* case agreed with the last statement, and this author also agrees with the last statement. *Continental Gas Co.* v. *American Fidelity & Cas. Co.* (1960), (7th Cir.), 275 F. 2d 381; *Zurich General Accident and Liability Ins. Co.* v. *Clamor, supra.*

This author's opinion in the case at bar does not preclude *de jure* insurance companies from the issuance of insurance policies containing excess coverage and escape clauses. In present day business excess coverage in many instances is a business necessity and without which businesses would probably flounder and perish.

However, comparing the case at bar with the standards set out and the court's holding in *New Amsterdam Cas. Co.* v. *Certain Underwriters at Lloyds, London, supra,* and *Zurich General Accident and Liability Ins. Co.* v. *Clamor, supra,* this author takes judicial notice of the fact that the two insurance companies hereby locked in litigation, after each had accepted

payment of consideration from the Halls and issued their respective policies are now attempting to avoid the obligation which they took on by the acceptance of the premium and delivery of the policy, which policies were, no doubt, drafted after an intense study of other similar policies, a review of cases litigated under policies with the same or similar "escape clauses" and by a staff of most able lawyers.

The Halls were most fortunate in that Associates was involved, and, therefore, Emmco promptly paid the loss to Associates, its assured, and thereby eliminated the Halls incurring a loss of crops or the need to refinance a new combine while waiting for this litigation to be resolved by the courts before being paid, which litigation could have lasted for a number of years by appeals, et cetera.

Inasmuch as Indiana Farmers Mutual Insurance Company, the primary insurer, denied all liability under its "escape clause" and inasmuch as Emmco Insurance Company paid the entire loss on the destruction of the combine by fire and expended the amount of $12,000, of which it recovered $265 salvage, less $75 storage costs, and sustained a net loss of $11,810; and inasmuch as Emmco is now seeking to recover the total cost of its loss from Farmers Mutual Insurance Company, in my opinion it would be unconscionable and against public policy and would, in fact, be an *unjust enrichment* to Indiana Farmers Mutual Insurance Company to be permitted by the court to refuse to make payment as the primary insurer of the combine and it would be further the same unjust enrichment to Emmco Insurance Company for it to recover the entire amount it paid Associates under the loan, the same being the full amount of the fire loss.

It appears to me that to permit Indiana Farmers Mutual to pay nothing on this loss after having been paid its premiums and, on the other hand, for Emmco to recover reimbursement from Indiana Farmers Mutual for the total amount it has paid out on the loss after having been paid a valid consideration for its policy would cause to exist an "inequality so strong,

gross and manifest that it is impossible to state it to a man of common sense without producing an exclamation at the inequality of it." *Weaver* v. *American Oil Company* (1971), 257 Ind. 458, 276 N. E. 2d 144.

I am of the opinion that the two escape clauses of the two insurance companies are in irreconcilable conflict and, therefore, in equity, the two insurance companies must share the loss pro rata, as hereinbelow set out.

I have determined that our courts, in equity, have worked out some fairly simple formulae for determining the share of one of two or more obligors entitled to contribution when he has paid in excess of that share. The general rule is that the share of an obligor equally liable with others upon the same obligation is one divided by the total number of solvent obligors subject to the jurisdiction of the court.

In *Norris* v. *Churchill* (1898), 20 Ind. App. 668, 51 N. E. 104, the facts were that the appellee brought an action against the appellant for contribution. They, with three others, jointly purchased a horse, each of the five purchasers paying one-sixth part of the price. The remaining one-sixth part of the purchase money they borrowed from a bank upon their joint promissory note payable at said bank upon demand. The appellant, without the knowledge or consent of the appellee, paid the bank the one-fifth part of the amount of the note in cash. The other makers, on the same day, gave their joint promissory note, negotiable by the law merchant, to the bank for the balance, being four-fifths of the amount of the debt, the appellant not joining with the other makers in the execution of the latter note. Prior to the appellant's said payment of a part of the debt, two of the makers of the original note became insolvent and so continued thereafter. When the second note became due the makers renewed it and upon this third note the bank sued and recovered judgment thereon against the makers. The appellee paid the judgment by giving his note negotiable by the law merchant to the bank, and the bank assigned the judgment to the appellee. The appellee thus

paid all the original debt except the one-fifth part thereof so paid by the appellant. The five makers of the original note owned equal interests in the horse. When the five makers of the original note borrowed the money for which it was given, they agreed between themselves that each should pay one-fifth of the amount borrowed.

The question presented to this court was whether the appellee was entitled to contribution from the appellant upon the above stated facts. The court said:

". . . The right to contribution originated in equity, and is based upon natural justice. It applies to any relation, including that of joint contractors, where equity between the parties is equality of burden, and one of them discharges more than his share of the common obligation. [Citing cases.] Where a number of persons borrowed a sum jointly, but received different portions for their several uses, and one of the borrowers became insolvent, it was held that the others should contribute to pay his share, in proportions to the amount received by each. [Citing case.] * * * The suit for contribution was not based upon any note or judgment, but was founded upon that implied contract. Equity looks through mere forms to find the natural justice of the whole transaction. Two of the five original joint debtors being insolvent, and the appellee having been compelled to pay, in addition to his own share, the shares of these two insolvents, equity, which is equality, demanded that the debtors who were not insolvent should equally bear the burden of the shares of the insolvents so paid; that the appellant should reimburse the appellee to the extent of one-third of the amount which the latter had thus been compelled to pay in excess of his ratable share of the joint debt." *Newton* v. *Pence* (1894), 10 Ind. App. 672, 38 N. E. 484; *Lorimer* v. *Julius Knock Coal Co.* (1929), 246 Mich. 214, 224 N. W. 362.

Where two or more obligors equally bound upon the same obligation limit their liabilities to different maximums, the share of any one equals the maximum amount assumed by him divided by the sum of the maximum amounts assumed by all the solvent obligors subject to the jurisdiction of the court. E.g., *Gray* v. *American Surety Co.* (1931), 93 Ind. App. 377,

175 N. E. 686 (where one co-surety assumed maximum obligation of $12,000 and other a maximum obligation of $70,000, the share of the actual obligation of $28,000 assumed by the first was equal to 12/82 x $28,000). As I have determined, the share of each insurer where two or more are bound upon the same liability should be based upon the premiums paid for the risk. In choosing this basis of apportioning liability I discard the rule that the share of each should be based upon the maximum amounts assumed for one very good reason.

Except where standard policies are involved, the precise terms and provisions of policies written by different insurers for the same kind of loss will vary. An insurer taking fewer risks and offering less favorable terms to the insured, presumably will make up for it by charging a lesser premium. As terms are more favorable, presumably the premiums charged will be greater. Therefore, it is my opinion that the most equitable basis for apportioning liability among different insurers liable for the same loss should be based upon the annual (or other term) premiums charged for the loss risk[1] covered by the policies. Hence, if A Insurance Company and B Insurance Company both write policies covering the same

$$\text{loss risk, A's share of the loss} = \frac{\text{Risk loss premium charged by A}}{\text{Sum of premiums charged by A \& B}} \times \text{Loss}$$

If the premium charged for fire loss by A was $60 and by B

---

1. If the insurer's policy separately allocates premiums for different risks or coverages, only the premiums assigned to the loss sustained should be computed into this formula. For example, suppose that A Insurer charged a total premium of $100, $60 of which was for fire and other losses, and $40 thereof for theft, and this charge is shown on the policy. In case of a fire loss, the premium for the loss risk would be $60, and this would be the premium which would go into the formula in determining A Insurer's share of the loss. If the premiums was not so allocated, the premium for the risk loss would be $100. This will encourage disclosures of premium charges for blanket risks, a practice which should be encouraged to allow insureds to better know what they are buying and the price they are paying for it.

was \$40, and the fire loss was \$1,500, the share of A $= \frac{60}{100} \times \$1,500 = \$900$.

As I have indicated in this case, if the policies of the insurers in the above example cover different property but in common cover property upon which the loss is sustained, then the amount of the premium charged by each insurer should be apportioned on the basis of the value of the total property covered by the policy. Thus determination of the premium charged by each insurer should be multiplied by the value of the property covered by the loss divided by the total value of the property for which the premium was charged. If A's fire insurance policy written for a premium of \$60 covered Machines #1 (worth \$1,000), #2 (worth \$500) and #3 (worth \$300) and #3 was destroyed by fire, the "premium charged by A" for purposes of computing A's share of liability $= \frac{300 \times \$60}{1,800} = \$10.$[2]

One further matter must be considered. If a maximum liability is assumed, as is usually the case, neither insurer may be held in excess of the maximum fixed by its policy. The insurer, however, should be able to recover the sum of the maximums assumed by the insurers, and when the maximum is reached as to one insurer under the above formula, the other must then bear the remainder of the loss up to the limits of its policy.

If an insurer does not or is not able to supply the necessary information as to values of property covered by the policy loss risk, the law here should apportion liability on the basis of the premium paid for the loss risk without apportionment.

This court said in *Farmers Mutual Ins. Co.* v. *Summers, supra,* "This court has previously declared that its function is not to remake an insurance contract * * * We do not intend to change this rule in the case at bar."

2. A's Share would then $= \frac{10}{50} \times \$1,500 = \$300.$

I am of the opinion that our courts owe the same protection alike to one and all. Equity and good conscience dictate that where there is more than one insurance company on a risk and where liability exists on the part of each company involved and there is a loss that each company should be responsible for its pro rata share of the loss, the total payment for the loss never to exceed the actual value of the property destroyed. For me to hold otherwise would be to make possible an unjust enrichment to the insurance companies refusing to pay, all of which is not equitable and within the realm of honest dealings and fair play.

We must not now or ever overlook the fact that an individual's and a corporation's last hope for his or its safety and redress is our courts and, therefore, our courts must be ever diligent and extend every effort within their power to protect and defend the weak, the individual, the strong, and the corporations, and treat them all equally under our laws.

I would, therefore, reverse the trial court and remand the cause with instructions for the trial judge to hear evidence pertaining to the amount of the premiums paid to the respective parties hereto, together with the amount of coverage allocated by the defendant-appellee, Indiana Farmers Mutual Insurance Company, to the gleaner-combine after its purchase and the Halls had increased their insurance coverage thereon, and to render its judgment in accordance with this opinion.

NOTE.—Reported in 283 N. E. 2d 404.